FRANCIS M. STEWARD

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 18, 1898.*

1. CRIMINAL LAW—*to constitute larceny the taking must be without consent.* Where the owner of property voluntarily parts with its possession there can be no larceny, as that crime always involves the taking and conversion of property without the owner's consent.

2. SAME—*inducing owner to part with title to draft by false representations is not larceny.* Inducing the owner of a draft to part with the title thereto by fraudulent and unfair representations is not larceny, where the owner intended to part with such title though at the time protesting his unbelief in such representations, and though he afterwards demanded the return of the draft.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. A. N. WATERMAN, Judge, presiding.

ARNOLD TRIPP, for plaintiff in error:

When the owner parts with the title and possession of property absolutely it is not larceny, even though obtained by false pretenses. *Collins* v. *State*, 15 Lea, 68; *Ross* v. *People*, 5 Hill, 294; *Thorn* v. *Turk*, 49 Sickels, 94; *Kellogg* v. *State*, 26 Ohio St. 15; *Lewer* v. *Commonwealth*, 15 S. & R. 93; *Johnson* v. *People*, 113 Ill. 99; *Stinson* v. *People*, 43 id. 397; *Welsh* v. *People*, 17 id. 339; Roscoe on Crim. Evidence, 606.

In a prosecution for larceny, an instruction which directs the jury, in case certain facts are proven, to find the defendant guilty, must submit to the jury a hypothesis based on the evidence and embody all facts necessary to be proven, or it is erroneous. *Hix* v. *People*, 157 Ill. 386.

An indictment for obtaining a check calling for the payment of money should describe the check by setting out its substance at least, or allege a substantial reason for the failure to do so. Wharton on Crim. Pl. (8th ed.) sec. 183; *Bonnell* v. *State*, 64 Ind. 508.

It is necessary, in all cases of indictment for larceny, that some description sufficient to identify the thing with certainty to a general intent should be given, or the indictment is fatally defective. *State* v. *McLeod*, 5 Jones, 321.

One cannot be convicted of larceny of a note made payable and delivered to the person charged. *Wilson* v. *State*, 1 Port. 121.

EDWARD C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, HARRY OLSON, Assistant, C. A. HILL, and B. D. MONROE, of counsel,) for the People:

Where a written instrument is the subject of larceny it may be described in the indictment by the term usually employed to describe it, without stating its purport or giving a copy of it. 1 McLain on Crim. Law, sec. 595; *State* v. *Hall*, 85 Mo. 669.

A draft is made the subject of larceny by the statutes of this State, therefore it may be described in the same manner as other things which have an intrinsic value, —

that is, by any description applicable to it as a chattel. Under statutes as to larceny of promissory notes, bills of exchange, etc., it is not necessary to describe the instrument stolen more particularly than in the case of property, and the description of the instrument by its usual name, and the amount of the face thereof and its value, is sufficient. 1 McLain on Crim. Law, sec. 595; *Commonwealth* v. *Bretton,* 100 Mass. 206; *State* v. *Pierson,* 59 Iowa, 271; *Whalen* v. *Commonwealth,* 90 Vt. 544.

There may be a conviction of larceny from the person although the evidence shows such violence as to indicate robbery. *State* v. *Graff,* 66 Iowa, 483; 1 McLain on Crim. Law, sec. 609.

Where the consent of the owner to the taking is procured only by force or duress, it does not, of course, prevent the act being a crime. 1 McLain on Crim. Law, sec. 559; *Regina* v. *McGrath,* L. R. 1 C. C. 205; *Regina* v. *Lovell,* 8 Q. B. Div. 185; *Regina* v. *Hazel,* 11 Cox, 597.

If the property is obtained by duress then no title passes, and the offense is larceny. *Perkins* v. *State,* 65 Ind. 317; *Regina* v. *Morgan,* 6 Cox's C. C. 408.

Where property is taken openly it may be considered as tending to show want of criminal intent; but such conduct is not conclusive, and the question of intent is for the decision of the jury. *People* v. *Hanson,* 84 Cal. 291; *State* v. *Powell,* 103 N. C. 424; *State* v. *Hill,* 114 id. 780; *Barnes* v. *State,* 103 Ala. 44.

It is sufficient if the property be taken in the presence of the owner. It need not be taken from his person. 4 Blackstone's Com. 242; 2 East's P. C. 707.

The means need not be such as would put in fear one used to the ways of the world. *State* v. *Carr,* 43 Iowa, 418.

When the offense is committed by putting in fear it is robbery, and may be larceny. If the property is taken against the will of the owner, it is sufficient if the property be delivered during the continuance of the fear or apprehension. Rapalje on Larceny, sec. 447.

There may be constructive fear. A menace of any kind which operates on a man so as to put him, in his own apprehension, under the necessity of delivering his money to another who meant to steal it, is a constructive force. 2 East's P. C. 719.

Robbery is larceny, aggravated by the fact that the goods are taken from the person of the owner by violence or putting in fear. When, therefore, one is indicted for larceny and the evidence shows that he might have been guilty of robbery, he cannot complain or urge that therefore the State has arraigned him for a less aggravated crime than that of which he was really guilty. To prove a robbery is to prove a larceny. *Bonsall* v. *State*, 35 Ind. 462; *Hickey* v. *State*, 23 id. 21.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the larceny of a draft for $50 from Herman Klepstein, and was sentenced to imprisonment in the penitentiary. Defendant was a doctor, occupying an office in the Lakeside Building, in Chicago. Herman Klepstein resided near Groton, South Dakota. He came to Chicago December 29, 1897, with a car-load of stock, arriving at the Union Stock Yards at four o'clock in the morning. He delivered his stock and then fell in with one Timothy Englehard, who was in the habit of bringing patients to defendant and receiving some compensation for doing so. Englehard took Klepstein to a store and persuaded him to be measured for a suit of clothes, and then treated him to a glass of beer, after which they went down town on a street car. On the way Englehard asked Klepstein what was the matter with him, and said that he looked sick, to which Klepstein replied that he was not sick. When they got down town Englehard assisted in getting Klepstein's pass extended, and said that he had to go to defendant's office to get some medicine for his baby. He

persuaded Klepstein to go into the office, and spoke to
defendant about medicine for his baby, and then intro-
duced Klepstein and said that he looked sick,—that his
eyes looked bad. The evidence for the People upon which
defendant was convicted was substantially as follows:
After the introduction defendant told Klepstein that he
looked sick, and he replied that he was not sick. Defend-
ant said that he was a professor and could tell when people
ple were sick, but could not tell what was the matter
until he made an examination. He and Englehard told
Klepstein to pull off his overcoat, and Klepstein threw
his shoulders back and they took it off. They then told
him to take off his other coat and vest and pull down his
suspenders, and he did so. Englehard then went out
of that room and defendant pulled Klepstein's shirt up
around his neck. Klepstein laid down on the examina-
tion chair and defendant made a physical examination,
and told him that he had heart disease, brain trouble and
piles. After the examination Klepstein got up and put
on his clothes and was going away, but defendant said
that he could not go until this was settled for,—that the
treatment had already begun and would have to be set-
tled for. Defendant then called Englehard back into
the office and said that he and Klepstein had decided on
everything but the amount; that he wanted $150 to treat
him, one-half in cash and that he would take a note for
the rest. Klepstein said that that was more money than
he had; that he only had a little money—a $50 draft. De-
fendant asked to see the draft and Klepstein took it out.
Defendant looked at it and said that was all right, and
asked him to endorse it, which he did. Defendant took
the draft and filled out a note for $150, payable in sixty
days, and endorsed the amount of the draft, $50, as a
payment on it. Klepstein signed the note and defendant
took it and the draft. Defendant then wrote a prescrip-
tion and they all went down to a drug store, where de-
fendant handed the prescription to a clerk to be filled for

Klepstein. The prescription was filled and the package was handed to Klepstein, who paid the charge of $3.75 for it. Defendant went out and Klepstein complained to Englehard, saying that he was not sick and did not need the medicine. Englehard said that he was sorry that he thought as he did, and proposed to go back to the doctor's office and see if they could get the draft back. They went to the office and Klepstein said that he was not sick and would give defendant $25 if he would give the note and draft back. The defendant was going out to lunch and said he had no time, and the parties all took lunch together at a restaurant. Defendant left the restaurant first, and after he left Englehard proposed to go back to defendant's office and see if they could not get the draft back. They went back again but defendant refused to give back the draft. The next day Klepstein went again with a friend and asked for the note and draft, and offered to give defendant $25 if he would return them. He refused, but gave him the note back, tearing off the signature and keeping the draft. Klepstein was examined ten days later by another physician, who did not find him afflicted with the diseases defendant claimed existed. A thorough examination developed nothing of any consequence in the way of disease, but, on the whole, the man was in good condition and health.

Defendant testified that the contract was entered into voluntarily. The evidence as to the character of defendant, and his reputation for honesty and fair dealing as well as veracity, was conflicting. A clerk in the drug store testified that Klepstein told him about the arrangement for treatment with the doctor, but said that he was afraid the doctor would not cure him and that his wife would not be pleased when he got home. Klepstein admitted that at the time of the examination he told defendant that he would deposit $200 if he would make him as strong and healthy as he was when he was seventeen years old, but defendant said that he could not do that.

The crime of larceny always includes the taking and conversion of property without consent of the owner. It involves a trespass, and there can be no larceny where there is a consent to the taking of the property with the intention that the possession and title shall pass. Where the owner voluntarily parts with the possession and title the crime of larceny is not committed. If defendant, by fraudulent and unfair statements and representations, induced Klepstein to voluntarily part with the possession and title of the draft, intending to transfer such possession and title to him, there could be no larceny, no matter what else it might be. (*Welsh* v. *People*, 17 Ill. 339; *Stinson* v. *People*, 43 id. 397; *Johnson* v. *People*, 113 id. 99.) There is no doubt that such was the fact, and that Klepstein meant to part with the draft absolutely and to transfer the title to defendant. The only claim made on behalf of the People is, that the draft was obtained by force and duress. But the evidence does not sustain this claim. Klepstein endorsed the draft after the examination and after his clothes were on and his supposed friend, Englehard, had come back into the office. There was no physical force whatever, and no show of any. Klepstein testified that he was scared, but it is plain that he had no reference to duress, physical force or threats of violence. The methods employed were disreputable, and Klepstein was over-persuaded and induced to do what he would not have otherwise done, but it was not from any restraint or apprehension of violence. They told him that he was sick, and although he said that he was not, yet he aided in taking off his overcoat and took off his other clothing himself and voluntarily submitted to the examination. After the prescription was written he accompanied defendant to the drug store, where the prescription was filled and he paid for it. The only thing that is called a threat is that defendant said that he must settle for what had been done, but he made no attempt to leave the office, and there was no threat of

bodily harm or injury and no compulsion or restraint of his liberty. He told the clerk at the drug store of the contract between him and the doctor, and his only fear then was that the doctor would not carry out his agreement and that his wife would be displeased. The evidence did not establish the crime of larceny.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*