PETE BUSSART v. STATE.

176 So. 32.
Opinion Filed July 31, 1937.
Rehearing Denied September 3, 1937.

*E. M. Baynard,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BUFORD, J.—I cannot agree that the judgment should be reversed in this case because I think that where one obtains possession of property by means of fraud or trickery with the preconceived design to appropriate the property to his own use, the taking amounts to larceny because the fraud vitiates the transaction and the owner is still deemed to retain constructive possession of the property. The conversion of it by the defendant is such a trespass to that possession as to constitute larceny.

In this case possession of the check was delivered to the accomplice of the defendant only because of the trickery and fraud practiced upon the maker of the check. It was not a voluntary delivery. "The consent of the owner in surrendering the possession of property must be as broad as the taking." Jarvis v. State, 73 Fla. 652, 74 Sou. 796. See also Groover v. State, 82 Fla. 427, 90 Sou. 473.

In this case the check was delivered to Virgil Bishop, but was only so delivered because the maker of the check believed that the name of Virgil Bishop had been drawn from the can, while in truth and in fact the name of Mrs. G. A. Gooding had been drawn from the can; and except for the fraud and deception which was practiced upon the maker of the check by Pete Bussart, Morris Lamb and Virgil Bishop the check would not have been passed from the possession of the maker to Virgil Bishop, nor would the check or proceeds thereof have been converted to their own use by Bussart, Lamb and Bishop.

I do not think that this conclusion is contrary to the

authorities cited in the opinion by Mr. Justice BROWN in support of the conclusion which is reached in his opinion.

I think the judgment should be affirmed.

Mr. Justice BROWN's opinion was written to be the opinion of the Court. Mr. Justice BUFORD prepared the above as a dissenting opinion and it was concurred in by other Justices as indicated. So it is the opinion prepared for Mr. Justice BUFORD becomes the controlling opinion and the opinion by Mr. Justice BROWN becomes a dissenting opinion.

Judgment affirmed.

ELLIS, C. J., and TERRELL and CHAPMAN, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—This writ of error is from a final judgment adjudging the defendant guilty of grand larceny, and sentencing him to serve eighteen months in the State Penitentiary.

Information was filed against Pete Bussart in the Criminal Court of Record for Palm Beach County charging him with feloniously stealing, taking and carrying away "One Hundred Seventy-five Dollars, good and lawful money of the United States of America, United States Currency, a better and more particular description of which said money is to the County Solicitor unknown, of the value of One Hundred Seventy-five Dollars, good and lawful money of the United States of America, of the goods, property and chattels of A. Dabrow and H. Gold."

Trial was had and the jury found the defendant guilty of grand larceny as charged. Motion for new trial was denied. The court entered its judgment of conviction and sentence upon the verdict of the jury. Writ of error was taken from that judgment.

The first question presented is whether the evidence was sufficient to sustain the verdict of guilty of grand larceny.

The facts in evidence are briefly these: A. Dabrow and H. Gold owned and operated two moving picture shows, one in Pahokee and one in Belle Glade, Florida. Every Thursday night between certain hours they conducted in their picture shows what is commonly known as "Bank Night." The drawing of names was held one Thursday night in Pahokee and the following Thursday night in Belle Glade, and alternated back and forth in that manner. Any person registered for participation in the award might be present at either place on "Bank Night" and be eligible to receive the award, the name of the person drawn being telephoned to the picture show where the drawing did not take place. The drawings were conducted in these picture shows in a manner peculiar to that locality. The name of each person registered to participate in "Bank Night" was typed on a narrow strip of paper with a teletype machine, the kind of machine used in telegraph offices, the piece of paper containing the name of the registrant placed in a capsule, the capsule closed, and each of such capsules placed in a large tin can. On "Bank Night" the manager of the theater where the drawing was being held would ask for two persons to volunteer to serve as judges and for one child to draw the name from the can.

The evidence shows that according to a pre-arranged plan, Pete Bussart, the defendant, and Morris Lamb responded on Thursday night, September 19, 1935, when the call for two volunteers for judges was made. A little girl about nine years of age was called to the stage to draw the name. Morris Lamb held the can while the little girl selected a capsule to withdraw, which, when done, she handed to Pete Bussart, the defendant. After opening a capsule in his hands, the defendant revealed the name found therein as Virgil Bishop. Morris Lamb, an accomplice, and the other judge at the drawing, testified that the name of Mrs.

G. A. Gooding was drawn from the can, that the capsule containing her name was not opened, but that the defendant substituted in its place the capsule, prepared by the defendant and Lamb before going to the theater, containing the name of Virgil Bishop, and secreted the capsule containing Mrs. Gooding's name until after the show. No one in the audience or on the stage that night noticed the change of capsules in the defendant's hands, including Morris Lamb, who testified that the change occurred. Morris Lamb testified that after the show that night the defendant showed him the capsule that was drawn from the can and that it contained the name of Mrs. G. A. Gooding. The drawing took place in Pahokee, while Virgil Bishop, according to the pre-arranged plan, was present at the theater in Belle Glade, and was given a check for $175.00, payable to cash, which was later cashed for its full face value and was divided between the defendant and Morris Lamb and Virgil Bishop, after the expenses of the adventure had first been paid, in the manner previously agreed upon.

Larceny at common law may be defined as the taking and carrying away, of the personal property of another, which the trespasser knows to belong to another either generally or specially, without the owner's consent, and with the intent to deprive the owner of his property therein. See Driggers v. State, 96 Fla. 232, 118 So. 20. 17 R. C. L. 4, Sec. 1; Clark on Criminal Law 241, Sec. 101; Rapalje on Larceny and Kindred Offenses 3, Sec. 1. Our statutes, Secs. 7223 and 7224 C. G. L., did not change the elements necessary to constitute the crime of larceny. The owner's non-consent to the taking must be proven, by direct or circumstantial evidence. Kearson v. State, 123 Fla. 324, 166 So. 832.

A check drawn on a bank and payable to the order of the payee named therein, being a chose in action, was not the

subject of larceny at common law, see 17 R. C. L. 29, 33, but is made so by the statute making it larceny for anyone to steal the "order" of another. Sec. 7223 C. G. L. See Minger v. State, 91 Fla. 79, 107 So. 416; Hart v. State, 92 Fla. 809, 110 So. 253; Walker v. State, 114 Fla. 500, 153 So. 911.

The information charged the defendant with larceny of $175.00 in lawful money, whereas the proof was that a check for $175.00 was received from the owners of the theater by an accomplice of the defendant, which was cashed for $175.00, part of which the defendant obtained. It has been held that it does not constitute a variance between allegation and proof to charge the defendant with larceny of money and to prove he stole a check upon which the money was obtained, because a check is an order for the payment of the amount of money stated on the face of the instrument. See Hunt v. State, 72 Ark. 241, 79 S. W. 769, 105 A. S. R. 34, 2 Ann. Cas. 33, 65 L. R. A. 71. Neither is it necessary to a conviction for larceny that all of the property as charged shall be proven to have been stolen. Raines v. State, 42 Fla. 141, 28 So. 57. However, the value of the property stolen must be at least $50.00 for the crime to be grand larceny, otherwise it would be petit larceny, provided the other elements of the crime were proved. Sec. 7223 C. G. L.

Where one obtains *possession* of property by means of fraud or trickery with a preconceived design to appropriate the property to his own use, the taking amounts to larceny, for the fraud vitiates the transaction, the owner is still deemed to retain constructive possession of the property, and the conversion of it by the defendant is such a trespass to that possession as constitutes larceny. 17 R. C. L. 13, Sec. 13; 88 A. S. R. 569; Note; see also Finlayson v. State, 46 Fla. 81, 35 So. 203; Jarvis v. State, 73 Fla. 652, 74 So.

796; Groover v. State, 82 Fla. 427, 90 So. 473. But the established rule at common law was that if the owner of goods alleged to have been stolen voluntarily parted with both the *possession* and the *title,* to the alleged thief, not expecting the goods to be returned to him, or to be disposed of according to directions given, neither the taking nor the conversion amounted to larceny. Aldrich v. People, 224 Ill. 622, 79 N. E. 964, 115 A. S. R. 166, 8 Ann. Cas. 284, 7 L. R. A. (N. S.) 1149; Thorne v. Turck, 94 N. Y. 90, 46 Am. Rep. 126, because of the absence of any trespass in the taking. Stewart v. People, 173 Ill. 464, 50 N. E. 1056, 64 A. S. R. 133. See also Albritton v. State, 81 Fla. 684, 88 So. 623.

"If the owner intends to part with his entire ownership in the property, instead of with his mere possession, the offense is not larceny, but is something else, either cheating or obtaining property by false pretenses, generally the latter. Hence the rule is well established, that when by means of fraud, conspiracy, or artifice, the possession of property is obtained with a felonious intent, and the title as well as the possession is parted with, the crime is not larceny, but that of obtaining property by false pretenses." 88 A. S. R. 572, note and cases cited.

The distinction between larceny and obtaining property by false pretenses is succinctly stated by Rapalje in his work on Larceny and Kindred Offenses, in the following language:

"The rule is that if, by trick or artifice, the owner of personal property is induced to part with the custody or naked possession to one who receives the property *animo furandi,* the owner still meaning to retain the right of property, the taking will be larceny; but if the owner parts with not only the possession but the right of property also, the offense of the party taking the property will not be larceny, but that

of obtaining goods by false pretenses. Thus where one pays money voluntarily to another who has falsely represented himself as an officer having a warrant for such party's arrest for a crime, this does not constitute either larceny **or robbery.** So one who by false representations induces another to part with the possession of money for the purpose of buying medicine for him, obtaining the money, is not guilty of larceny for misappropriating the money, but of obtaining money by false pretenses." Rapalje—Larceny and Kindred Offenses 62, Sec. 57.

The evidence showed that the owners of the theaters intended to part with their ownership as well as their possession of the check, which was an order for the payment of $175.00 to cash, to the person whose name was drawn from the can that night, if such person was present at either of the two theaters at that time. They voluntarily gave the check to Virgil Bishop, who received it openly upon the stage of their theater, without any trespass on his part, after his name was called. Although the owners of the theaters intended to give away the check for $175.00 under the conditions already set out, yet they were induced by fraud and deception to deliver possession and title to the check to Virgil Bishop, because in the absence of that fraud and deception, the check would have been delivered to Mrs. Gooding, if she was present at that time, or would have been retained by the management for another week and twenty-five dollars added to the amount of the check, and another such drawing would have been held. The evidence in this case fails to establish the crime of larceny because of the absence of the element of trespass or non-consent of the owner in the taking of the check, the owner having voluntarily parted with both the possession and the title to the check. The evidence may have been sufficient to show the commission of some other crime against the laws of this

State, but not the particular crime charged in the information.

It is contended that the court erred in permitting the witness, A. Dabrow, to testify as to the contents of the check.

The court, over objections of counsel for the defendant, permitted witness A. Dabrow, one of the owners of the theaters, to testify as to the contents of the checks made out for distribution as the award for "Bank Night" on that particular night. Thereafter, the check given to Virgil Bishop that night was introduced in evidence, and later testimony corrected previous testimony that was inaccurate in an immaterial particular concerning the contents of the check. The check itself was the best evidence of what it contained, and verbal testimony was inadmissible to vary the contents of the check. However, any error committed by permitting the witness to testify as to the contents of the check was rendered harmless by the introduction of the check in evidence, and also by later testimony correcting the previous incorrect statements made as to its contents.

For the error pointed out herein, I think the judgment below should be reversed.