349 So.2d 761 (1977)
Linda STANTON, Appellant,
v.
The STATE of Florida, Appellee.
No. 76-1725.
District Court of Appeal of Florida, Third District.
August 30, 1977.
*762 Hirschhorn & Freeman, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Anthony Musto and Sidney M. Pertnoy, Asst. Attys. Gen., for appellee.
Before PEARSON, BARKDULL and HUBBART, JJ.
PER CURIAM.
Linda Stanton was found guilty by a jury of grand larceny. On this appeal, she questions the sufficiency of the evidence to constitute the crime for which she was found guilty and claims error in the trial court's failure to require the State to produce at trial a claimed statement made by the victim. She also claims reversible error in the court's failure to give a curative instruction or to declare a mistrial following an improper and prejudicial question by the prosecutor where an objection to the question was sustained but no curative instruction or mistrial was requested by trial counsel. We hold that none of the points presents reversible error, and we affirm.
The complainant, Jose Sanchez, was experiencing personal health and marital problems, which were further complicated by the fact that his son was suffering from anemia. After visiting several doctors without success, Sanchez, upon reading an advertisement in a local newspaper, called the appellant, Linda Stanton, a licensed spiritualist, and made an appointment.
Sanchez's initial appointment and meeting with appellant was either on February 26th or 27th, 1976. For this initial visit and consultation, Sanchez was charged five dollars by appellant. During the course of this initial meeting, appellant advised Sanchez that her fee to help him with his problems would be twelve hundred dollars. Sanchez, upon complaining about this fee, was told that the alternative was that he could leave. Upon being told this, Sanchez agreed to the fee.
Sanchez returned that same afternoon without an appointment and gave appellant six hundred dollars  the remaining six hundred dollars to be paid when appellant's work was completed.
From this point on, the appellant's and the complainant's versions of the facts are diametrically opposed. Sanchez testified that he returned the following Monday, March 1, 1976, with two eggs, which he had been told by the appellant to bring with him. The appellant performed some kind of ceremony with the eggs and then told Sanchez to get $10,000. During all this, Sanchez testified that only he and the appellant were present. Sanchez then went to the bank where he had two accounts (each being a ten thousand dollar account) and withdrew ten thousand dollars. A State's witness, a vice president of the bank, testified that on March 1, 1976, ten thousand dollars was withdrawn from Mr. Sanchez's account.
*763 Sanchez then allegedly returned to appellant's office and gave her the money  again, with no one else present. Appellant then told him to go back to the bank and get the rest of the money (the other ten thousand dollar account) and also to bring back a white chicken.
Sanchez then apparently went to the bank to withdraw the remaining ten thousand dollars and then returned to appellant's office with the money and a chicken. The appellant went through a type of ritual with the chicken  once again, with no one else present.
According to Sanchez, appellant then put all the money under the chicken's wing and told Sanchez that within two days, more or less, he could get his twenty thousand dollars back. Appellant told Sanchez that she was going to bury the money and chicken and get the evil out of them and they agreed he would return to her office in two days.
According to Sanchez, the next time he saw appellant was two days later, on Wednesday. At that time, the appellant told him that it was "too soon," to which Sanchez responded that he could not wait any longer. Appellant replied that it was impossible. It was at this point that Sanchez believed there was a fraud being perpetrated upon him.
Sanchez then went to the police to press charges. Officer Postal, with whom he spoke, told him to call appellant to see what she would say. He called and she told him to "come in on the following Wednesday," which he did. This time he was joined by appellant and her husband, while appellant's secretary was just outside the room's open door. Sanchez claimed he was insulted by them and his money was not returned. This was the last time Sanchez went to appellant's office. Since that last meeting, however, Sanchez's health remained unchanged, his son's improved, but his domestic difficulties increased.
Under the appellant's first point, it is contended that where the receipt of money from another is coupled with a promise that said money would be returned some time in the future but the money is never returned, the facts are not sufficient to support a conviction of grand larceny. This contention does not present error in view of the holding of the District Court of Appeal, Fourth District, in Williams v. State, 239 So.2d 127 (Fla. 4th DCA 1970), where, under very similar facts, the court held:
* * * * * *
"As to the first point, we find that the evidence was sufficient to support a determination by the jury either that appellant obtained the $700.00 by fraud or trickery with the preconceived purpose of converting the money to his own use and to deprive the owner thereof, thereby vitiating any consent of the owner to the taking, Campbell v. State, 1944, 155 Fla. 359, 20 So.2d 127; Bussart v. State, 1937, 128 Fla. 891, 176 So. 32; or that the consent was not as broad as the taking in that Everett only permitted appellant to retain the money for the purpose of blessing it and returning it to Everett in a few days, yet appellant either intended at the time of receiving the money, or decided thereafter to convert it to some unauthorized use with intent to permanently deprive the owner thereof."
See Mehr v. State, 59 So.2d 259 (Fla. 1952); Padgett v. State, 82 So.2d 372 (Fla. 1955), and Casso v. State, 182 So.2d 252 (Fla. 2d DCA 1966).
Appellant's second point urges error upon the failure of the court to require the production of a statement claimed to have been made by the victim to the State prior to trial. During the progress of this appeal, the appellant moved for an order of this court remanding the cause to the trial court for a hearing on the claimed statement. An order was thereafter entered by this court remanding the cause and temporarily relinquishing the jurisdiction "... for a period of thirty (30) days for the limited purpose of determining whether or not there [was], in fact, existing at the time the victim testified, a prior, sworn statement and, if so, whether said statement should have been turned over to the defendant *764 under the applicable Rules of Criminal Procedure and/or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." The trial judge conducted the hearing, and a supplemental record showing the matters before the court at that time, together with the court's findings, have been filed in this court. The trial judge found that no statement existed at the time the victim testified. We have reviewed the record and hold that there is substantial evidence to support the trial judge's finding of fact. We, therefore, find no error under appellant's second point.
The third point raises the question of whether the appellant was denied a fair and impartial trial as a result of a prosecutor's question propounded to the defendant, objected to and not answered.[1] There is no doubt that the question was highly prejudicial and improper. We first must decide whether or not the question was so potentially prejudicial to the defendant that it constituted fundamental error so that her conviction must be reversed even though her attorney only objected and upon receiving a ruling sustaining his objection apparently was satisfied with the result at that time. We think that there is no fundamental error and that trial counsel, as a tactical matter, decided not to proceed further by request for an instruction or by motion for a mistrial.
Furthermore, we think that there is no doubt that reversible error would have been found under those cases decided by the Supreme Court of Florida prior to the decision in State v. Jones, 204 So.2d 515 (Fla. 1967). See Goddard v. State, 143 Fla. 28, 196 So. 596 (1940), and Carlile v. State, 129 Fla. 860, 176 So. 862 (1937). However, in State v. Jones, the Florida Supreme Court held:
"Prior to the Gideon case the good resulting from the application of the exception over-shadowed the evil, for trial judges, notwithstanding the absence of objection, were admonished to intervene, sua sponte, and declare a mistrial thus assuring to many uninformed defendants on trial without counsel a fair and impartial trial.
"At the present time all defendants in criminal trials who are unable to engage counsel are furnished counsel without charge. Application of the exception is no longer necessary to protect those charged with crime who may be ignorant of their rights. Their rights are now well guarded by defending counsel. Under these circumstances further application of the exception will contribute nothing to the administration of justice, but rather will tend to provoke censure of the judicial process as permitting `the use of loopholes, technicalities and delays in the law which frequently benefit rogues at the expense of decent members of society.'
"It has been suggested that some courts today seem to be preoccupied primarily in carefully assuring that the criminal has all his rights while at the same time giving little concern to the victim. Upon the shoulders of our courts rests the obligation to recognize and maintain a middle ground which will secure to the defendant on trial the rights afforded him by law without sacrificing protection of society. As Mr. Justice Cardozo explained in Snyder v. Commonwealth of Mass., 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674, 687:
`But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.'
"The Court now recants the statement of the exception upon which respondent relies and henceforth will review challenged *765 argument of prosecutors only when an objection is timely made."
The decision in State v. Jones concerned improper remarks of prosecuting counsel to the jury. The present case concerns an improper question to the defendant. While there is a difference in the way the matter came to the jury's ears, we think that the difference does not destroy the efficacy of the holding in State v. Jones. We, therefore, hold that upon the sustaining of defense counsel's objection to an improper and prejudicial question, the trial court was not required to go further and admonish the jury or declare a mistrial in the absence of a motion therefor. We conclude that the attorney for the defendant got what he asked for and, in the absence of a motion for mistrial, might well have claimed double jeopardy if a mistrial had been declared. Cf. the principles of law in State ex rel. Larkins v. Lewis, 54 So.2d 199 (Fla. 1951), and McLendon v. State, 74 So.2d 656 (Fla. 1954).
Having considered each of appellant's points and finding no reversible error, the judgment and sentence are affirmed.
Affirmed.
NOTES
[1] [By Mr. Eade] All right, ma'am, finally one last question.
A. Yes, sir.
Q. Isn't it true in gypsy practice that it is okay to lie and cheat and steal if you can get away with it?
A. MR. HAFT: I object to that, Your Honor. It's the same thing as saying he would say to the blacks and the Jews. I object to that, Your Honor, as an ethnic slur.
THE COURT: Sustained."