THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGELA MURRAY, Defendant-Appellant.

First District (5th Division)   No. 1—92—3478

Opinion filed April 29, 1994.

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Sang Won Shim, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Defendant Angela Murray was convicted after a bench trial of theft, in violation of section 16—1(a)(1)(A) of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1)(A) (now 720 ILCS 5/16—1(a)(1)(A)(West 1992))); forgery, in violation of section 17—3(a)(2) (Ill. Rev. Stat. 1989, ch. 38, par. 17—3(a)(2) (now 720 ILCS 5/17—3(a)(2) (West 1992))); and unlawful use of a credit card, in violation of section 8 of the Illinois Credit Card and Debit Card Act (Ill. Rev. Stat. 1989, ch. 17, par. 5921 (now 720 ILCS 250/8 (West 1992))). She was sentenced to two years' probation and this timely appeal followed. We affirm in part, reverse in part and remand for resentencing.

On November 29, 1991, the day after Thanksgiving, a man and a woman bought a leather coat from Ms. Joan Fredricksen, a salesperson from a J.C. Penney department store in Golf Mill Shopping Center in Illinois. The woman presented a charge plate in the name of Anne Gooch. After checking with the credit department Ms. Fredricksen charged the sale to that account.

On January 3, 1992, Angela Murray was charged with theft, theft by deception, forgery and unlawful use of a credit card arising from the purchase of the leather coat. The charge of theft by deception (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(2)(A) (now 720 ILCS 5/16—1(a)(2)(A) (West 1992))) was dismissed before trial.

Ms. Fredricksen was called to testify by the State at defendant's trial. On direct examination she testified that she had worked from 5 p.m. to 9 p.m. on November 29, 1991. She stated that between the hours of 6 p.m. and 9 p.m., a young couple entered the coat department and quickly picked out an expensive leather coat with a fur collar. She identified defendant Angela Murray as the woman who had purchased the coat on November 29, 1991.

Ms. Fredricksen further testified that she talked to defendant as she was processing the transaction and that defendant handed her a J.C. Penney charge card to purchase the coat. When Ms. Fredricksen entered the charge card into the register, it indicated that the account was new. She then asked defendant for some identification and defendant could produce nothing but the J.C. Penney charge card with the name "Anne Gooch" on it. Ms. Fredricksen called a store manager to

ask if the credit card could be accepted for the purchase without other identification. This manager referred her to another manager who, in turn, referred her to the credit department. A credit department representative told Ms. Fredricksen to ask defendant for her address. Ms. Fredricksen did this and defendant responded by reciting a correct address but an incorrect telephone number. Ms. Fredricksen further stated that when she informed defendant that the telephone number was incorrect defendant then gave another telephone number. The representative from the credit department told Ms. Fredricksen to accept the credit card. Ms. Fredricksen then completed the transaction and gave defendant the coat. Ms. Fredricksen also testified that she wrote the address and the two telephone numbers on the sales receipt and watched defendant sign the name "Anne Gooch" on the sales slip.

On cross-examination Ms. Fredricksen testified that the J.C. Penney store is a high volume store and that she may see dozens of customers every day. She further testified that November 29, 1991, was not a busy day in the coat department and that the entire transaction with defendant lasted 15 to 20 minutes. In response to defense counsel's question about the hair color of the woman who had allegedly illegally purchased the coat she stated: "I still see her face in my mind from that night. It was black." Ten days after the event, however, she spoke with an Evanston, Illinois, police officer who reported that Ms. Fredricksen did not know the age of the woman, her hair color, her eye color or her complexion. She only knew the woman was black, husky, and about 5 feet 7 inches tall.

On redirect examination the State asked Ms. Fredricksen: "Of all the thousands of transactions that you handle as you have said, how is it that you recall this one?" and Ms. Fredricksen replied: "Because I had a great suspicion and I could just see their faces. I went home that night and I said they shouldn't have let those people buy that coat."

Mr. Charles Stokes testified for the State. He was a loss prevention manager for J.C. Penney and had investigated the transaction at issue in this case. To determine if J.C. Penney had been paid for the transaction, he had contacted the fraud department at the J.C. Penney regional credit center in Glenview, Illinois, which is not the location where defendant had purchased the coat. Mr. Stokes spoke with an agent at the credit center and that agent accessed the computer records of the account that J.C. Penney had charged to record the purchase of the leather coat. According to Mr. Stokes the agent then made a printout of the computer records and sent a facsimile to him.

The defense objected to the admission of Mr. Stokes' testimony

concerning the computer-generated record and to the admission of the record itself on the ground that a proper foundation had not been laid. In response to this objection, the State adduced further testimony from Mr. Stokes that J.C. Penney maintains its records as a matter of ordinary business practice on a computer. He testified that when he wants to access a record or get copies of a record he submits a request to an agent at the regional credit center in Glenview, Illinois. He is familiar with the entries and the meanings of computer printouts. Mr. Stokes testified as to the process of record retention after each transaction made at a J.C. Penney store.

Continuing his foundational testimony, Mr. Stokes testified that, although he was not a computer programmer and had not programmed the computer equipment used by J.C. Penney, he was familiar with the type of computer equipment used by J.C. Penney in maintaining its record keeping system. He explained the two types of computer systems used by J.C. Penney for credit card transactions. J.C. Penney uses IBM and National Cash Register (NCR) computers for credit card transactions. Mr. Stokes also testified that the computer records for credit card transactions are generated by sales clerks using NCR cash registers at the point of purchase. This data was part of the information returned from Glenview, Illinois, and sent by facsimile to him for use at trial. He did not testify as to any knowledge of the computers in Glenview and the agent from Glenview who retrieved the records requested by Mr. Stokes and sent him a facsimile of them did not testify at trial. He also testified that J.C. Penney employees do rely upon the data recorded in the computer system. Based upon this testimony, the court ruled that Mr. Stokes' testimony had established the reliability of the computer-generated record and that the facsimile of this record and Mr. Stokes' testimony regarding it would be admitted into evidence. This document was admitted as People's exhibit 3 in the trial court and the State filed a supplemental common law record containing this exhibit pursuant to this court's order of October 4, 1993.

Mr. Stokes, who had no personal knowledge of either the transaction or the account, then testified as to the contents of exhibit 3, which indicated that J.C. Penney had not been paid for the transaction described in exhibit 3 and had ultimately charged it off to an account reserved for losses from fraudulent transactions.

In particular, Mr. Stokes testified regarding exhibit 3 as follows:

"There's an account code that this purchase was put into is what's called a write off. We notated that this was a fraudulent purchase."

Explaining at greater length, Mr. Stokes stated that looking at exhibit 3:

"On the right-hand side, halfway through, you will see the letter M5 and the word fraud. The date of 2-3-92 was the date that it was written off as a fraudulent purchase, and put under account code AGY0096, which is the account code that we put that money into to write it off as a fraudulent purchase that we're never going to see this money.

We're not going to charge the legitimate cardholder for it because he's not responsible, and the company takes a loss, and they do it by putting it in that account code."

The defense has filed a supplemental brief and argument challenging the above-quoted testimony of Mr. Stokes on the ground that People's exhibit 3 does not support his testimony in that it does not contain the notation M5, nor the word "fraud," nor the account number AGY0096. The defense maintains that since Mr. Stokes' conclusion of nonpayment was predicated on the claimed existence of these notations in exhibit 3, the evidence presented to the trial court as exhibit 3 and presented to this court as a supplement to the common law record does not support his conclusion that J.C. Penney was not paid.

The parties stipulated that if Anne Gooch were called to testify, she would testify that she was the owner of a J.C. Penney credit card which was in her purse when her purse was stolen on November 12, 1991, in Evanston, Illinois. They further stipulated that Anne Gooch had not given anyone permission to use her credit card on November 29, 1991, and that she would testify that the signature contained on the sales receipt is her name, but it is not her handwriting.

Robin Mitchell testified for the defense. She testified that defendant picked her up from work on weekdays in November 1991. Ms. Mitchell testified that defendant picked her up at approximately 6:15 p.m. on those days, and that she would then drop defendant off at her mother's house at about 7 p.m. On cross-examination, however, Ms. Mitchell stated that she did not specifically recall being with defendant on November 29, 1991, during the time State's witness Fredricksen testified the transaction involving the allegedly illegal use of Ms. Gooch's credit card took place at the J.C. Penney store.

Defendant Angela Murray testified in her own behalf at trial. She stated that she had signed out of work at 5 p.m. on November 29, 1991. She testified that after leaving work she picked up her daughter at school and then picked up Ms. Mitchell's daughter at a babysitter's residence. She then picked up Ms. Mitchell at her place of employment in Waukegan, Illinois. In conclusion, defendant testified that she drove to her own residence arriving there about 7:30 p.m. She stated that she spent the remainder of the evening of November 29, 1991, in her home with friends.

At the conclusion of the trial, the court found defendant guilty of theft, forgery and unlawful use of a credit card. She was later sentenced to a term of two years' probation and this timely appeal followed.

Defendant was convicted of theft in violation of section 16—1(a)(1)(A) of the Criminal Code (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1)(A) (now 720 ILCS 5/16—1(a)(1)(A) (West 1992))). This provision of the statute is a codification of common law larceny and required the State to prove that defendant knowingly obtained and exerted unauthorized control over the leather coat owned by J.C. Penney with the intent to deprive J.C. Penney of the use and benefit of the property. One of the essential elements of the crime that must be established, therefore, is that defendant exercised unauthorized control over the property alleged to be stolen. Case law dating back before the turn of the century establishes that when a person induces an owner to part with the title and possession to his or her property absolutely, it is not larceny even though the owner is induced to do so by false pretenses or other deception. (See *Steward v. People* (1898), 173 Ill. 464, 50 N.E. 1056; *Hix v. People* (1895), 157 Ill. 382, 41 N.E. 862.) Although the person obtaining the property might be guilty of another crime, theft has not been established. This distinction in modern form exists today in that to establish the crime of theft the State must prove that defendant obtained "unauthorized" control, however brief, over the property of another with the intent to permanently deprive the owner of the use and benefit thereof. (See *People v. Kostatinovich* (1981), 98 Ill. App. 3d 611, 424 N.E.2d 864; *People v. Mays* (1980), 80 Ill. App. 3d 340, 399 N.E.2d 718; *People v. Joy* (1976), 44 Ill. App. 3d 349, 358 N.E.2d 101.) Fraudulent intent without proof of deprivation of the owner's property is insufficient to establish the crime of theft. The legislature revised the Criminal Code to create other criminal offenses such as theft by deception and unlawful use of a credit card to fill the gaps in criminal liability not covered by the common law larceny definition of theft.

■ The only person to testify on the issue of J.C. Penney's deprivation of the leather coat allegedly obtained by defendant was Mr. Charles Stokes, a loss prevention manager for J.C. Penney. Mr. Stokes had no personal knowledge of the transaction involving defendant and the coat. He had not seen defendant in the store nor had he seen her participate in the transaction. His entire testimony that J.C. Penney had suffered a loss due to nonpayment for the coat allegedly purchased with Ms. Gooch's credit card was based upon a facsimile of the computer printout of the transaction generated in Glenview, Illinois, which was not the site of the transaction in question and admitted into evidence as People's exhibit 3.

We will assume *arguendo*, without deciding, that a proper foundation was laid for the admission of this document. Mr. Stokes testified that this computer-generated document contained three notations establishing that it was a fraudulent transaction, that J.C. Penney had not been paid for the coat, and that the store had, therefore, been deprived of its property. They were: (1) "the letter M5"; (2) "the word 'fraud' " and (3) "the date of 2-3-92 *** that it was written off as a fraudulent purchase, and put under account code AGY0096 [the fraudulent purchase account code]."

Exhibit 3 was not included with the common law record filed with this court and was filed by the State as a supplement to the record pursuant to this court's order of October 4, 1993.

Upon review of this exhibit, defendant filed a supplemental brief arguing for the first time on appeal that this exhibit contains none of the indicias of fraud described in Mr. Stokes' testimony. She further argues that, therefore, this exhibit, even if property admitted, is irrelevant, and that Mr. Stokes' testimony is entitled to no weight since the indicias of fraud to which he testified are not borne out by exhibit 3. For reasons, however, which are unfathomable from this record, defense counsel at trial objected to neither the admission of People's exhibit 3, nor to Mr. Stokes' testimony regarding it on relevance grounds.

The State in its reply to this issue does not dispute the fact that its exhibit 3 does not contain the indicias of fraud testified to by Mr. Stokes. It further admits that Mr. Stokes relied on the J.C. Penney computer records printout he obtained from Glenview, Illinois, to make his determination that J.C. Penney had not been paid for the coat purchased by defendant. It is also clear from the record that Mr. Stokes conducted no other investigation concerning the fraudulent nature of defendant's transaction with J.C. Penney except to generate the printout of the computer records from Glenview to which he testified.

To support its contention that Stokes' testimony and People's exhibit 3 establish that J.C. Penney was not paid for the leather coat allegedly purchased by defendant through the use of Ms. Gooch's credit card, the State argues that we must defer to the trial judge's determination of the credibility of witnesses, the weight to be given evidence and its resolution of conflicts in the evidence. If this issue involved a conflict in the evidence, the standard of review urged by the State would be an appropriate one. This matter, however, involves a failure of proof.

Mr. Stokes had no personal knowledge of the transaction involving the alleged purchase of the leather coat from J.C. Penney

by defendant. His sole knowledge of that transaction was a printout of a computer-generated record transmitted from a center in Glenview, Illinois. Although the defense objected to the admission of this document on foundational grounds, it was never objected to on the basis of relevance and the court ruled that a proper foundational basis had been laid for its admission into evidence.

Similarly, with regard to Mr. Stokes' testimony regarding that record, objection was made by defendant that a proper foundation had not been laid for the admission of the document or his testimony about it. This testimony was not challenged on the basis of relevance due to the fact that exhibit 3 did not support Stokes' testimony about the fraudulent nature of the transaction, thus making his testimony as worthless as the document itself as far as establishing that J.C. Penney had suffered a deprivation of its property.

The trial judge is no better able than this court to determine whether exhibit 3 contains the indicias of fraud testified to by Mr. Stokes. This exhibit fails to establish that J.C. Penney was deprived of its property nor does that document establish that anyone obtained unauthorized control over Penney's property. Since the validity of Mr. Stokes' testimony regarding the significance of exhibit 3 depended upon the indicias of fraud he said were in the exhibit, but were not, his testimony is of no greater value than the People's exhibit 3 in establishing this element of the offense of theft. We, therefore, reverse the defendant's theft conviction.

■ Defendant was also convicted of the offense of forgery in violation of section 17—3(a)(2) of the Criminal Code. (Ill. Rev. Stat. 1989, ch. 38, par. 17—3(a)(2) (now 720 ILCS 5/17—3(a)(2) (West 1992)).) In order to prove this offense the State had to establish that defendant, with the intent to defraud, knowingly issued or delivered a document knowing it to have been thus made or altered. The indictment charging defendant with forgery refers to the sales slip entered into evidence as People's exhibit 1 as being dated "11-21-91." The sales slip introduced into evidence as People's exhibit 1 was dated "11-29-91." Defendant contends that since there was no evidence showing that she presented a charge slip dated "11-21-91" when she allegedly purchased the leather coat through the use of a forged document, the State has failed to prove her guilty beyond a reasonable doubt. *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068.

The State contends, and we agree, that a typographical error caused the discrepancy between the date specified in the indictment and the date specified in People's exhibit 3 admitted into evidence. The parties did not dispute that the transaction in question which

led to the charge of forgery in this case occurred on November 29, 1991. Where the use of an incorrect date in an indictment is a mere clerical error which does not hamper preparation of a defense or prejudice the defendant, the conviction will be affirmed. See *People v. Greenwood* (1969), 115 Ill. App. 2d 167, 253 N.E.2d 72.

Ms. Joan Fredricksen, the salesperson at the J.C. Penney store in Golf Mill Shopping Center, testified that defendant presented a credit card in the name of Ann Gooch and signed Ann Gooch's name to the sales slip in order to obtain a leather coat from J.C. Penney. Ann Gooch testified by way of stipulation that her credit card had been stolen before the date of purchase of the leather coat and that she had not signed the sales slip, nor authorized anyone to sign her name to obtain a purchase and more particularly did not authorize defendant to use her credit card. Proof of an element of this offense did not depend solely upon the testimony of a person with no personal knowledge of the transaction as the offense of theft did. Defendant offered a defense of alibi and mistaken identity in response to the forgery charge.

Although Ms. Fredricksen was somewhat evasive and hostile at times to the defense, and rather vague in her initial description of the offender, she not only positively identified the defendant as the person who purchased the coat on Ms. Gooch's credit card, but also testified she had observed her for 20 minutes during the transaction, had asked her several questions and observed her sign Ms. Gooch's name to the credit slip. In addition, defendant called an alibi witness to testify that defendant was with her all during the period of time the transaction in question took place. The witness' testimony, even if believed by the court, did not provide a complete alibi defense. It is the responsibility of the trier of fact to weigh the credibility of witnesses, to weigh evidence, draw reasonable inferences therefrom and resolve any conflicts in the evidence. (*People v. Phillips* (1989), 127 Ill. 2d 499, 538 N.E.2d 500; *People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317.) In the case at bar, if all the evidence of forgery is viewed in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that defendant was guilty of forgery. A person who without authority signs another person's name to a sales slip may be guilty of forgery. The credit card itself establishes that there is a line of credit and the credit card slip, like a check, purports to make use of the credit. The document on its face is complete and sufficient to create a legal obligation. This constitutes forgery. (See *People v. Roberts* (1975), 27 Ill. App. 3d 489, 326 N.E.2d 116.) Unlike theft, proof of loss is not required to complete the offense. We, therefore, affirm defendant's conviction of forgery.

■ Defendant was also found guilty of unlawful use of a credit card in violation of section 8 of the Illinois Credit Card and Debit Card Act. (Ill. Rev. Stat. 1989, ch. 38, par. 5921 (now 720 ILCS 250/8 (West 1992)).) In order to find defendant guilty of the unlawful use of a credit card, the State had to prove that defendant, with intent to defraud J.C. Penney, obtained a leather coat by using a credit card without the consent of the cardholder. For the reasons set forth above in our discussion of the offense of forgery, there was sufficient evidence upon which a rational trier of fact could have found defendant guilty based upon the testimony of Ms. Fredricksen and the stipulated testimony of Ms. Gooch. The offense is complete if a credit card is used with intent to defraud regardless of whether anything of value is actually obtained. *People v. Tarlton* (1982), 91 Ill. 2d 1, 434 N.E.2d 1110; *People v. Heinz* (1980), 87 Ill. App. 3d 1, 409 N.E.2d 64.

■ Finally, defendant contends that she was denied effective assistance of counsel under the standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for failure of counsel to suppress the in-court identification of defendant by Ms. Fredricksen on the ground that it was tainted by an improperly suggestive out-of-court photographic identification.

Defense counsel first attempted to suppress the out-of-court photographic identification testimony through a motion to suppress. The trial judge sustained defense counsel's motion to suppress the pretrial photographic identification because the State could not produce at trial the photographs used in that identification. Defendant contends that counsel was incompetent in failing to link up Ms. Fredricksen's trial testimony with the photographic array to establish that Ms. Fredricksen actually viewed the suggestive photographs containing a picture of defendant before she saw defendant in person, thus resulting in the court's denial of defense counsel's motion to suppress the in-court identification of defendant by Ms. Fredricksen.

Even assuming, *arguendo*, that counsel's failure to link up the photographic pretrial identification with Ms. Fredricksen's in-court identification was incompetent, it is not enough to establish that, but for this lapse, the outcome of the trial would have been different, as the second prong of the *Strickland* test requires.

Five factors are used to assess the reliability of an identification: the witness' opportunity to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the prior description of the offender; the level of certainty demonstrated at the confrontation; and the length of time between the crime and the confrontation. *People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317; *People v. Godinez* (1989), 191 Ill. App. 3d 6, 547 N.E.2d 561.

In the case at bar, we are of the opinion that these five factors were met. Ms. Fredricksen had sufficient opportunity to view defendant at the time of the occurrence. She stated that she was with defendant 15 or 20 minutes. She further stated that she paid close attention during the time of the transaction. She supported this by giving a detailed description of events surrounding the transaction. She made a statement describing defendant to the police after the occurrence although it was rather general in nature. She displayed a high degree of certainty in identifying defendant as the woman who had illegally purchased the coat. Finally, she underscored that certainty at trial when she testified that, "I still see her face in my mind from that night."

The key factor to the admissibility and weight to be given an independent identification is its reliability. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243; *Godinez*, 191 Ill. App. 3d 6, 547 N.E.2d 561.) The foregoing circumstances establish that even if defense counsel had linked Ms. Fredricksen's testimony to the suppressed photographic identification, her in-court identification of defendant was based on observations independent of and before any out-of-court photographic identification. Therefore, the trial court would still have admitted the in-court identification and a rational trier of fact could have convicted the defendant based upon it. Defense counsel's failure to attempt to establish a link between the out-of-court and in-court identification of defendant did not prejudice defendant in this case.

For the reasons set forth, defendant's convictions of forgery and unlawful use of a credit card are affirmed; defendant's conviction of theft is reversed and this cause is remanded for resentencing.

Affirmed in part; reversed in part and remanded.

GORDON and COUSINS, JJ., concur.