THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MANUEL RIVERA, Defendant-Appellant.

First District (4th Division)   No. 1—91—2291

Opinion filed August 5, 1993.—Rehearing denied September 8, 1993.

Rita A. Fry, Public Defender, of Chicago (Beth I. Solomon and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, Cristine Cook, and Thomas J. Darman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

A jury found Manuel Rivera guilty of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)) and attempted first degree murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—1). The trial judge sentenced him to concurrent terms of 50 years and 30 years in the Illinois Department of Corrections. On appeal the defendant contends: (1) the court erred when it failed to excuse two jurors who were parties to lawsuits pending in the circuit court of Cook County; (2) the jury instructions incorrectly stated the elements of attempted

murder; (3) prosecutorial misconduct in closing argument deprived the defendant of a fair trial; and (4) his sentence was improper. We affirm.

The defendant was arrested for the murder of Marlon Wade and the attempted murder of Tran Brown after they were shot on the corner of Broadway and Sheridan in Chicago on September 30, 1989. The shooting occurred at approximately 11:45 p.m. when rival gangs stood on opposite sides of the street near Gill Park and flashed their gang sign at each other. Brown was a member of the Vice Lords; the defendant was a member of the Spanish Cobras.

Five witnesses testified at trial that they saw the defendant shoot Brown and Wade.

Virgilio Muniz and his girl friend Loretta Helean testified they were sitting on a bench in Gill Park when they saw the defendant, whom they knew as "Gigolo," walk into the park and hide a gun in bushes about 15 feet from the bench. A few minutes later Muniz and Helean walked to the front of the park and saw a group of blacks on one corner of Broadway and Sheridan and a group of Hispanics on the opposite corner throwing bottles and shouting at each other. Then they saw the defendant run into the park, get the gun hidden in the bushes, and fire the gun five or six times at the group of black males across the street. Helean stated the defendant wore blue jeans and a white jacket. Muniz stated the defendant wore white "sweats." Muniz was a member of the Latin Eagles gang.

Genarro Loza also was a member of the Latin Eagles. He testified he also was at Gill Park on September 30, 1989. Sometime after 11:30 p.m. he saw 25 black males walk to the corner of Broadway and Sheridan. He flashed the Latin Eagle's gang sign at them, and they flashed back the Vice Lord's gang sign. The Vice Lords began to throw bottles across the street; then Loza heard gunshots behind him. He ducked, and the Vice Lords turned and ran. Loza turned around and saw the defendant firing a gun. He had seen the defendant a few times before the shooting and knew he was a member of the Spanish Cobras.

Tran Brown, a member of the Vice Lords, was shot in the back of the knee. He was taken to the hospital where he identified Loza as the male he had seen flashing gang signs from the west side of Broadway. Brown testified he was standing across the street with a group of males when he saw the defendant run to the corner behind Loza, pull out a gun, and fire towards Brown and his group. As Brown turned to run, he saw Marlon Wade fall to the ground and then he felt a shot in the back of his knee.

Ramon Morgan, a friend of Marlon Wade, saw the defendant fire a gun into a group of males killing Wade and injuring Brown. He stated the defendant wore dark pants and a white turtle neck.

The defendant presented an alibi defense. Three witnesses testified on his behalf.

Daniel Gonzalez testified he was with the defendant on September 30, 1989, from 6 p.m. until 11:15 p.m. when he drove the defendant home. Gonzalez telephoned the defendant 15 minutes later at 11:30 p.m. and asked if he wanted to go back out. The defendant said he was going to sleep. Gonzalez stated the defendant wore jeans and a white jacket that night. He stated the defendant was known as "Gigolo" and he and the defendant were members of the Spanish Cobras. He further explained the Latin Eagles blamed a recent killing of one of their members on the Spanish Cobras.

The defendant's mother testified she saw the defendant when he came home around 11 p.m. on September 30, 1989, and she did not see or hear him go out again that night.

The defendant's father stated he heard the defendant come home around 11 p.m.

A jury found the defendant guilty of the murder of Wade and the attempted murder of Brown.

■ On appeal the defendant first contends the trial court erred when it did not excuse two jurors who were parties to lawsuits pending in the circuit court of Cook County. He cites section 14 of the Jury Act (Ill. Rev. Stat. 1989, ch. 78, par. 14), which states "[i]t shall be sufficient cause of challenge of a petit juror that he *** is a party to a suit pending for trial in that court." The statute further provides "[i]t shall be the duty of the court to discharge from the panel all jurors who do not possess the qualifications provided in this Act, as soon as the fact is discovered." Ill. Rev. Stat. 1989, ch. 78, par. 14.

The State maintains the defendant waived this issue because he had three unused peremptory challenges after the jury was selected. We agree.

Although the trial court lacks discretion to empanel a juror when that juror is disqualified by statute (*People v. O'Malley* (1986), 143 Ill. App. 3d 474, 493 N.E.2d 82), a defendant cannot complain when he does not exhaust his peremptory challenges (*People v. Gonzalez* (1992), 238 Ill. App. 3d 303, 606 N.E.2d 304; *People v. Cunningham* (1970), 123 Ill. App. 2d 190, 260 N.E.2d 10). In *Cunningham*, the defendant argued that the court erred when it refused to exclude members of the venire who were exposed to pretrial publicity. The trial court did not disqualify the members for cause, but instead ex-

panded the *voir dire* examination to determine the effect of pretrial publicity on prospective jurors. After the jury was chosen, the defendant had 19 unused peremptory challenges. This court held the defendant must exhaust his peremptory challenges to preserve on appeal the argument of improper jury selection. The court reasoned the defendant must have thought the jury was fair and impartial because he did not exhaust his peremptory challenges. *Cunningham*, 123 Ill. App. 2d at 199, 260 N.E.2d at 14.

The *Gonzalez* court applied the same reasoning and held the defendant waived any argument challenging jury selection because he did not exhaust his peremptory challenges. The defendant in *Gonzalez* argued that the trial court made improper remarks during jury selection which implied that prospective jurors who had litigation pending would not be automatically disqualified. While holding the defendant waived this argument, the court also held the trial court did not violate any of the provisions governing jury selection. *Gonzalez*, 238 Ill. App. 3d at 323, 606 N.E.2d at 318.

We recognize neither *Gonzalez* nor *Cunningham* involved a juror who was a party to a pending lawsuit. But two additional cases provide further guidance. In *Mathieu v. Venture Stores, Inc.* (1986), 144 Ill. App. 3d 783, 494 N.E.2d 806, during trial, a juror informed the court that after he was sworn he was named a defendant in a civil suit. The defendant objected at trial. The court overruled the objection and refused to excuse the juror for cause. On appeal the court held the defendant failed to show prejudice and therefore refused to decide whether the trial court was required to excuse the juror for cause.

Similarly in *People v. Foster* (1990), 195 Ill. App. 3d 926, 552 N.E.2d 1112, the court held the defendant was not prejudiced by the trial court's failure to excuse a prospective juror for cause. The defendant used a peremptory challenge to excuse the juror but still had unused peremptory challenges after the jury was selected. This court held that because the defendant did not exhaust his peremptory challenges, he was not denied a fair and impartial jury. The court stated, "Since the defendant has demonstrated no prejudice, we do not find that the court's action was error." *Foster*, 195 Ill. App. 3d at 949, 552 N.E.2d at 1128-29.

We apply the reasoning of these cases and hold that a defendant who fails to exhaust his peremptory challenges cannot complain that the jury selection was improper.

■ Next the defendant argues the court erred when it tendered an attempted murder instruction which improperly defined murder

under that charge. The court instructed the jury on murder and attempted murder but included only one definition for murder. The defendant cites *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28 and *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, for the holding that a defendant tried for both murder and attempted murder is entitled to a separate instruction on the attempted murder charge which limits the murder definition to acts committed with the specific intent to kill.

The State concedes the attempted murder instruction was erroneous but maintains the defendant waived this argument because he did not object at the instruction conference, did not offer an alternative instruction, and did not raise the issue in his post-trial motion. *People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331, 335 (when a party does not object to jury instructions, waiver is the rule).

The court erred in this case when it instructed the jury that the defendant was guilty of attempted murder if it found the defendant intended to kill *or* do great bodily harm to Tran Brown. (*People v. Felder* (1992), 224 Ill. App. 3d 744, 586 N.E.2d 729.) Although the defendant did not object or offer an alternative instruction, Supreme Court Rule 451(c) provides for judicial review of substantial defects in jury instructions to correct grave errors, even though a party fails to object. (134 Ill. 2d R. 451(c).) That is, where a case is close factually, fundamental fairness requires the jury to be properly instructed. When intent to kill is evident from the facts, our supreme court has held that although an attempted murder instruction is erroneous, it is harmless. *People v. Leger* (1992), 149 Ill. 2d 355, 597 N.E.2d 586; see also *People v. Pasch* (1992), 152 Ill. 2d 133, 171, 604 N.E.2d 294, 308 (substantial instructional defects are not waived by failure to object if the interests of justice require review).

This case was not close factually. For the charge of attempted murder, the State was required to show the defendant intended to kill. The evidence showed the defendant went to Gill Park and hid a gun. When rival gang members appeared across the street from the park he retrieved the gun and fired five or six shots at Tran Brown, Marlon Wade and the rest of the scattering rival gang members. Intent to kill may be inferred from the character of the assault and the use of a deadly weapon. (*People v. Jones* (1989), 184 Ill. App. 3d 412, 429, 541 N.E.2d 132, 142.) Here, substantial evidence was presented to show the defendant acted with intent to kill. Five witnesses, including one of the victims, testified they saw the defendant fire his gun five or six times into a group of rival gang members after 11:45 p.m. The only contradictory evidence offered was the testimony of a fellow

gang member and the defendant's mother and father that the defendant was not at Gill Park but at home. Even they were unable to account for his whereabouts after 11:30 p.m. that night. And, Gonzalez, a defense witness, confirmed two State witnesses who testified the defendant wore dark pants and a white shirt. We find the error in the instruction was harmless. See *Leger*, 149 Ill. 2d 355, 597 N.E.2d 586.

■ The defendant next argues the prosecutor in closing argument misstated the law of attempted murder and improperly accused the defendant of "concocting" a defense. The defendant did not object to the alleged misstatement of the law and did not include the issue in his post-trial motion. So, it is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The defendant also argues he was prejudiced when the prosecutor said in closing argument, "They came up with this concocted scheme." The record shows the trial court sustained the defendant's objection to the word "concocted" and instructed the jury to disregard the remark. The admonition is sufficient to blunt prejudice to the defendant. *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286; *People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 516 N.E.2d 382.

■ Finally the defendant contends his sentence is excessive. He argues the court abused its discretion by not taking into account his age, rehabilitation potential, and desire to continue his education. He also argues the court erred in considering the victim's death as an aggravating factor.

The trial court sentenced the defendant to 50 years for his conviction for first degree murder. The sentence range for first degree murder is 20 to 60 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a).) When a sentence is within the statutory guidelines we will not reduce it unless we find the court abused its discretion. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708.) The record shows the court considered the defendant's education, employment history, the fact that he helped out at his grandmother's neighborhood store, the lack of drug use, and his family history. The court also considered the defendant's gang affiliation, finances, prior convictions, and that he was on probation when he committed the crime in this case. We find no abuse of discretion in the sentence.

■ The defendant further argues the court included Marlon Wade's death as an element in aggravation when he stated during the sentencing hearing:

"I am considering the injuries involved here, that the acts of Mr. Rivera caused these very serious injuries, as serious as you can get, the death of one individual, a young boy just starting

in life as an adult or not even actually legally an adult, but just starting his life ***."

Generally an element of the offense cannot be used in aggravation in sentencing. (*People v. Ferguson* (1989), 132 Ill. 2d 86, 97, 547 N.E.2d 429, 433.) Death is an essential element in murder and it is improper for a court to consider it a matter in aggravation. *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138 (victim's death could not be considered as an aggravating factor in a conviction for voluntary manslaughter); *People v. Fisher* (1989), 186 Ill. App. 3d 255 (victim's death could not be considered as an aggravating factor in a conviction for second degree murder).

The court in *Saldivar* explained it was proper to consider the degree of harm, the force employed and the manner in which the victim died. When the remarks of the trial judge here are read in the context of the facts established at trial—firing at least five rounds from a lethal weapon in the general direction of a group, killing one and seriously wounding another—it is clear that they are within the *Saldivar* guidelines.

Affirmed.

JOHNSON and HOFFMAN, JJ., concur.