THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH CURTIS, Defendant-Appellant.

First District (4th Division)    No. 1—91—0309

Opinion filed May 19, 1994.

Rita A. Fry, Public Defender, of Chicago (Greg Koster, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Sari London, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Defendant Joseph Curtis was charged by indictment with two counts of murder and one count of armed violence. After a jury trial, defendant was found guilty of one count of murder. The jury found defendant ineligible to receive the death penalty. Defendant was sentenced to 40 years in the Illinois Department of Corrections. Defendant now appeals his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was convicted of the April 10, 1988, murder of Robert Springs.

Two days before that murder, on the night of April 8, defendant shot Terry Ware, a man who had dealt drugs together with Robert Springs. On this night, defendant had walked in on an argument in the street involving Ware, Springs, and a third person over who was going to sell drugs in a certain building. After the third person stated that he would "take care of it," defendant left and said he would return.

Five minutes later, defendant, hands in his pockets, approached the group. Ware asked defendant, "You went and got a gun, didn't you?" Ware reached out and patted defendant's jacket pocket and felt an object. Ware said, "Oh, he got a gun." Ware then told Springs, who was standing 10 feet away, "Rob[,] shoot him." Defendant, however, pulled a gun. Ware turned to run, and defendant fired three shots at him. Ware's back was to defendant when defendant began shooting. Ware was shot and subsequently died at the hospital of a gunshot wound to the back. Later that night, two eyewitnesses to the shooting identified defendant's photograph out of a photo array at Area 5.

The murder of Robert Springs occurred two days later. At 10 p.m. on April 10, 1988, Springs had received a telephone call. After hanging up the phone, he picked up his car keys, told his sister Claudette that he would return in 15 minutes, and left the house. Moments later, some gunshots rang out. At that time, Claudette, who was on the second floor of the house in a front bedroom, rushed to a window overlooking the street below. She saw her brother's car with its tires spinning and a dark-skinned man with long curls standing at

the window of the driver's side of the car. A few seconds later, she saw the car take off down the street and the man turn to run through a gangway. Claudette saw the man turn around, holding a gun in his hands. The man then ran to a car which was waiting in a gangway across the street. Claudette raced into the street to her brother's car, which had crossed a street and crashed into parked cars. She saw that her brother had been shot in the forehead. Robert Springs was taken to Loretto Hospital, where he died of the bullet wound.

At trial, Claudette Springs testified that there was a street light in front of the house and that her view of the street was unobstructed on the night of the shooting. She testified that the dark-skinned man whom she observed from her second-floor window had curls and was wearing a dark jean outfit, brimless hat, and gym shoes. She also testified that on the day after the shooting, a police officer came to her house and showed her six photographs. Claudette identified defendant's photo from the photo array as the man whom she saw standing beside her brother's car.

On November 4, 1988, seven months after the shooting, Claudette went to the police station and again identified defendant's photo from a five-photograph array. Later at trial, she picked the same photograph of defendant out of the five photographs she was shown.

On November 18, 1988, Claudette went to the Cook County jail to view a lineup. After being shown a four-man lineup, she picked out defendant, who was then wearing his hair in some sort of a "perm." At trial, Claudette again identified defendant in a lineup photograph and also in person in the courtroom.

The jury found defendant guilty of first degree murder, but not eligible for the death penalty. The trial court sentenced defendant to a 40-year term. Defendant filed his notice to appeal on January 14, 1991.

We affirm defendant's conviction.

## DISCUSSION

### I. IDENTIFICATION

Defendant initially contends that he was not proved guilty of murder beyond a reasonable doubt because the State's identification evidence was insufficient.

A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People v. Stanciel* (1992), 153 Ill. 2d 218, 235, 606 N.E.2d 1201, 1210.) The standard to be applied in reviewing the sufficiency of evidence is whether any rational trier of

fact, after viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ward* (1992), 154 Ill. 2d 272, 314, 609 N.E.2d 252, 269.

The credibility of identification witnesses and the weight accorded their testimony lie within the province of the trier of fact. (*People v. Godinez* (1989), 191 Ill. App. 3d 6, 10, 547 N.E.2d 561, 563.) Where the identification of defendant constitutes the central question in a criminal prosecution, the testimony of even a single witness is sufficient to convict where the witness is credible and viewed the accused under conditions permitting a positive identification to be made. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319; *People v. Wardell* (1992), 230 Ill. App. 3d 1093, 1098, 595 N.E.2d 1148, 1151; *Godinez*, 191 Ill. App. 3d at 10, 547 N.E.2d at 563.

In evaluating an identification, courts are to consider the following five factors: (1) the opportunity the victim had to view the accused at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the accused; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. *Slim*, 127 Ill. 2d at 307-08, 537 N.E.2d at 319; *Wardell*, 230 Ill. App. 3d at 1098, 595 N.E.2d at 1151.

■ Defendant argues that the first three of these factors weigh in his favor. We disagree. First, Claudette had sufficient opportunity to observe defendant after gunshots rang out because she had, from her vantage point on the second floor of her house, an unobstructed view of the street down below where the shooting took place. Although Claudette did not view defendant for an extended period of time, she nevertheless saw him long enough to observe that he was armed, that he had been standing on the driver's side of her brother's car, and that he subsequently ran through a gangway just across from her house. Second, Claudette's attentiveness in observing the scene is exemplified by her ability to recall that defendant was carrying a gun, that defendant ran to a car, that defendant wore his hair in curls, and that he wore a dark jean outfit, gym shoes, and a gray hat. Third, although Claudette initially described defendant as 5 feet 8 inches to 6 feet tall and weighing 150 pounds when in fact he is 5 feet 4 inches and weighs 135 pounds, this description does not render her identification unreliable. (See *Slim*, 127 Ill. 2d at 312, 537 N.E.2d at 321 (noting that discrepancies in descriptions of height and weight are not decisive factors on review because few persons can make accurate estimations of such characteristics).) Claudette was able to provide specific detail about defendant's appearance, clothing, and

hairstyle, and to identify defendant in a photo array on the day after the shooting and in a lineup photograph taken seven months later, even though defendant's hair was much shorter in both photographs than on the night of the shooting.

Viewing the testimony in the record in a light most favorable to the prosecution, we must conclude that a rational jury could find the essential elements of a reliable identification to support a conviction beyond a reasonable doubt.

## II. MOTION TO SUPPRESS PHOTO ARRAYS

Defendant next argues that the trial court erred in denying his motion to suppress all identification testimony. Defendant contends that the entire identification procedure used by the police was unnecessarily suggestive, since his photograph was the only one to appear in the photographic arrays shown to Claudette Springs in both April and November 1988. Defendant also argues that the use of a photo array while he was in custody tainted the subsequent lineup procedure. Finally, defendant contends that he was the only person in both photo arrays and the lineup.

In denying defendant's motion to suppress, the trial court found that Claudette Springs had positively identified defendant's photo out of the photo array presented to her on November 4, 1988:

> "I did not hear any evidence that that identification was tentative. *** I do not know how I would have ruled *** had there, in fact, been a tentative identification. But that's not what I heard. [Claudette] identified first time around. Identified him second time around."

The trial court also found that the lineup was not impermissibly suggestive. Although defendant was leaning in the lineup picture, the trial judge noted that the authorities did not set or "orchestrat[e]" defendant's posture in the picture.

On a motion to suppress, the defendant bears the initial burden of establishing that "within the totality of the circumstances, the pretrial identification was so unnecessarily suggestive that it gave rise to a substantial likelihood of irreparable mistaken identification." (*People v. Harris* (1991), 220 Ill. App. 3d 848, 860, 580 N.E.2d 1342, 1350.) A trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. *People v. Melock* (1992), 149 Ill. 2d 423, 448, 599 N.E.2d 941, 952; *People v. Lynch* (1993), 241 Ill. App. 3d 986, 990, 609 N.E.2d 889, 892.

■ We are not persuaded that this identification procedure was unduly suggestive. Although the Illinois courts have not addressed the issue of whether identical photographs of a defendant may

properly be used in separate arrays, the Seventh Circuit did recently consider a due process claim brought by a defendant whose photo was the only one to appear in two photo arrays. In *United States v. Donaldson* (7th Cir. 1992), 978 F.2d 381, defendant argued that the suggestive photo spreads tainted the identification testimony used by the government. In affirming the defendant's conviction, the *Donaldson* court held that the identification procedures were not unduly suggestive, where two pictures of defendant were taken three years apart and bore little resemblance to each other. *Donaldson*, 978 F.2d at 386-87.

While the present case does not involve such a lengthy passage of time as that in *Donaldson*, we note that more than half a year had lapsed between the dates that Claudette Springs viewed the two arrays. We also note that there was no indication of any suggestive conduct on the part of the detective in displaying the photo arrays; at the first array, for instance, Claudette was not told that the photo array included a picture of a possible suspect. In addition, besides positively selecting defendant's photo in both arrays, Claudette also identified defendant at the lineup and later in court, even though defendant's hairstyle during these identification procedures was different than his hairstyle on the night Robert Springs was murdered. Under these circumstances, we do not believe that the second array was so impermissibly suggestive that it gave rise to a substantial likelihood of irreparable misidentification. *People v. Harris* (1991), 220 Ill. App. 3d 848, 860, 580 N.E.2d 1342, 1350.

■ We also reject defendant's contention that the use by the police of the second photo array when defendant was already in custody tainted the subsequent lineup procedure. Although the supreme court disfavors the use of photographs as a basis of identification when a suspect is in custody and a lineup is otherwise feasible (*People v. Kubat* (1983), 94 Ill. 2d 437, 471, 447 N.E.2d 247, 261), "no *per se* rule has been established." (*People v. Godinez* (1989), 191 Ill. App. 3d 6, 10, 547 N.E.2d 561, 563.) Defendant bears the burden of showing that the photographs were unnecessarily suggestive and that they led to a substantial likelihood of misidentification. (*Godinez*, 191 Ill. App. 3d at 10, 547 N.E.2d at 563.) Here, defendant has failed to meet that burden.

■ Finally, we reject defendant's argument that the lineup procedure was impermissibly suggestive on the basis that he was the only individual in the lineup whose photograph was seen by Claudette Springs when she viewed the photographic arrays. We find this challenge unfounded. Lineups from which the defendant is identified as the perpetrator are not rendered inadequate merely because the

defendant is the only person in the lineup whose photograph was previously shown to the person viewing the lineup. *People v. Johnson* (1992), 149 Ill. 2d 118, 148, 594 N.E.2d 253, 268.

### III. "OTHER CRIMES" EVIDENCE

Defendant's next issue on appeal is that he was denied a fair trial when the trial court admitted evidence concerning defendant's killing of Terry Ware, an associate of Robert Springs, in an argument over drugs two days before Springs himself was shot.

Before trial, the State had submitted a motion *in limine* to introduce evidence of the Terry Ware murder in order to show defendant's motive, intent, and consciousness of guilt. After hearing offers of proof, the trial court ruled that it would allow the evidence to be admitted, but only for the limited purpose of establishing defendant's motive. Defendant argues that the prejudicial impact of this "other crimes" evidence outweighed its probative value.

Testimony describing other crimes committed by defendant may be introduced at trial if the evidence is offered for a purpose other than to establish defendant's propensity to commit crime and if the probative value of the evidence outweighs its risk of unfair prejudice. (*People v. Maxwell* (1992), 148 Ill. 2d 116, 130, 592 N.E.2d 960, 967.) Evidence of other crimes in which defendant may have participated is admissible when relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*People v. Coleman* (1994), 158 Ill. 2d 319, 333.) While motive is not an essential element of a crime, any evidence which tends to show that the defendant had a motive for committing the crime is relevant because it increases the probability that defendant in fact committed the offense. (*People v. McGhee* (1992), 238 Ill. App. 3d 864, 878, 605 N.E.2d 1039, 1049.) A ruling allowing the introduction of evidence of other offenses committed by defendant will be upheld on appeal unless it represents an abuse of discretion. *Maxwell*, 148 Ill. 2d at 130, 592 N.E.2d at 967.

■ The record reflects that the trial court, in its ruling on the motion *in limine*, did consider defendant's arguments about the relevance and potentially prejudicial impact of the evidence of defendant's shooting of Terry Ware. We find that the challenged testimony was relevant because the evidence tended to show one of defendant's motives for killing Robert Springs. At the time Ware was shot, Robert Springs was an eyewitness. Springs and Ware were friends. Defendant knew that Springs, as an eyewitness to the Ware shooting, could either report defendant to the police or retaliate in some way later against defendant.

The record demonstrates that the trial judge did attempt to bal-

ance the probative value and prejudicial effect of the evidence surrounding the Terry Ware shooting. She acknowledged that the details of the shooting were unquestionably prejudicial, but recognized a "sufficient nexus" existed between the Ware shooting and the killing of Robert Springs. The trial court decided to allow the State to elicit evidence of the Ware shooting, but warned the parties that she would limit the parameters of admissible evidence. Noting that she could not "delineate everything," the trial judge encouraged defense counsel to object whenever the State's evidence became more detailed than was justifiable. In light of the trial court's balancing of these various factors, we conclude that the trial judge did not abuse her discretion and that defendant was not denied a fair trial.

## IV. TESTIMONY ABOUT USE OF POLICE IDENTIFICATION RECORD PHOTOGRAPHS IN ARRAY

Defendant next argues that he was denied a fair trial when the State's witness, Detective Roland Paulnitsky, testified at trial that the photo arrays which he displayed to Claudette Springs in April and November 1988 were from Chicago police department identification records. Defendant contends that this testimony suggested to the jury that defendant had a previous police record.

Although defendant acknowledges that he waived any objections to Detective Paulnitsky's testimony when his trial attorney failed to object at trial or raise any objections in his post-trial motion, he nevertheless urges this court to consider the issue as plain error. The plain-error rule allows a reviewing court to consider waived issues in situations where the evidence is closely balanced or where the alleged error is so fundamental and of such magnitude that the defendant was denied a fair trial. *People v. Lucas* (1992), 151 Ill. 2d 461, 482, 603 N.E.2d 460, 469.

We do not believe the evidence here is so closely balanced that we may reach the merits of the claimed error. Nor do we believe that the alleged error was so fundamental that it deprived defendant of a fair trial. During his testimony, Detective Paulnitsky never stated that defendant had a prior criminal record. He did not explain why the photograph of defendant happened to be in the possession of the Chicago police department, nor did he suggest that defendant's photograph had been taken during a previous arrest. The detective's remarks were elicited incidentally and were harmless.

## V. EXCLUSION OF EVIDENCE OF TERRY WARE'S AND ROBERT SPRINGS' PRIOR CONVICTIONS FOR VIOLENT ACTS

Defendant next argues that he should have been allowed to pres-

ent evidence of Terry Ware's and Robert Springs' previous convictions of violent crimes to support his claim that he shot Ware in self-defense. At trial, defendant sought to introduce certified copies of Ware's convictions in 1982 for attempted murder, armed robbery, armed violence, and unlawful restraint, and Springs' convictions in 1982 of armed robbery, armed violence, and unlawful restraint. According to defendant, the convictions showed the propensity of both Ware and Springs for violence, and thus were probative of defendant's claim that both men were the aggressors on the night that Ware was shot. The trial court ruled that this evidence was irrelevant.

■ We believe that the trial court properly excluded evidence of the previous convictions of Ware and Springs. Whether defendant acted in self-defense or not when he shot Terry Ware is not central to the case here, which concerns the trial of defendant for the murder of Robert Springs. The trial court admitted testimony about the Ware shooting for the limited purpose of establishing defendant's possible motive for the shooting of Robert Springs.

## VI. EXCLUSION OF EVIDENCE THAT VICTIM TOLD HIS GIRL FRIEND HE WAS GOING OUT TO PARTICIPATE IN A DRUG TRANSACTION

Defendant next claims that the trial judge erred when she excluded evidence that Robert Springs, moments prior to his murder, had received a phone call at his house and then told his girl friend, Wendy Ezell, that he was going out to do a drug deal.

At trial, Ezell testified that she was at Springs' home on the night of April 10, 1988, when Springs received a phone call from someone named "Joe." Ezell believed that "Joe" was an individual named Morris Carr. After Springs hung up the phone, he told Ezell that he would return in 15 minutes. Ezell testified that defendant did not seem nervous, upset, or scared. Defense counsel then asked Ezell if she knew why Springs was going outside, and the State objected. Defense counsel made an offer of proof that Ezell would have testified that Springs told her he was leaving the house to do a drug deal with Morris "Joe" Carr. The trial court ruled that Ezell's testimony was hearsay being offered for truth of the matter asserted, and did not fall within an exception.

Hearsay evidence refers to an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless it falls within an exception. (*People v. Lawler* (1991), 142 Ill. 2d 548, 554, 568 N.E.2d 895, 899.) Statements reflecting a declarant's state of mind are admissible as exceptions to the hearsay rule when

the declarant is unavailable to testify and a reasonable probability exists that the proffered hearsay statements are truthful. (*People v. Davis* (1993), 254 Ill. App. 3d 651, 660, 626 N.E.2d 1187, 1193.) In order to be admissible, however, such statements must be relevant to a material issue in the case. *Davis*, 254 Ill. App. 3d at 660, 626 N.E.2d at 1193.

Defendant contends that Springs' statements to Ezell were admissible as evidence of Springs' state of mind because they show his intent to participate in a drug transaction with Morris "Joe" Carr and that he did undertake that mission. According to defendant, this evidence made it more likely that an individual other than defendant shot Springs.

■ We are not persuaded by defendant's argument. The challenged testimony adds nothing to the evidence of Springs' state of mind when he left the house; throughout the trial, defendant elicited information from eyewitnesses that Springs was not nervous, upset, or afraid after receiving the phone call from "Joe." Evidence of Springs' expressed intention to participate in a drug transaction served no purpose other than to allow the jury to infer that the victim did in fact engage in a dangerous drug deal with Morris "Joe" Carr. In light of the questionable relevance of Springs' statements and the considerable prejudice inherent in them, we believe the trial court acted correctly by excluding the challenged testimony from the evidence.

## VII. CAUSE OF CHALLENGE OF A JUROR

Defendant next argues that he was denied a fair trial because the trial court failed to excuse for cause a prospective juror who had a landlord-tenant lawsuit pending in the circuit court of Cook County. Even though defendant did not exhaust all his peremptory challenges and agreed to waive the fact that the prospective juror had a lawsuit pending, defendant asserts that the trial court failed to discharge its "statutory duty" of removing this juror from the jury. In support, he cites to section 14 of the Jury Act, which states that "[i]t shall be sufficient cause of challenge of a petit juror that he *** is a party to a suit pending for trial in that court." (Ill. Rev. Stat. 1991, ch. 78, par. 14.) The statute further provides "[it] shall be the duty of the court to discharge from the panel all jurors who do not possess the qualifications provided in this Act, as soon as the fact is discovered." Ill. Rev. Stat. 1991, ch. 78, par. 14.

■ This court recently addressed this same issue in *People v. Rivera* (1993), 251 Ill. App. 3d 375, 621 N.E.2d 179. In *Rivera*, this court held that a defendant who failed to exhaust his peremptory chal-

lenges waived any error arising from the trial court's decision not to excuse two jurors who were parties to pending lawsuits. *Rivera*, 251 Ill. App. 3d at 379, 621 N.E.2d at 183.

As in *Rivera*, defendant here failed to exhaust all of his peremptory challenges. He cannot now complain that the jury selection was improper.

## VIII. PROSECUTORIAL MISCONDUCT

Defendant's next claim of error concerns the propriety of several remarks made by the prosecutor during rebuttal and closing argument.

A prosecutor is allowed wide latitude in making his or her closing and rebuttal arguments, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion. (*People v. Pasch* (1992), 152 Ill. 2d 133, 184-85, 604 N.E.2d 294, 315; *People v. Ramey* (1992), 151 Ill. 2d 498, 554, 603 N.E.2d 519, 543.) Because the trial court is in a better position than a reviewing court to determine the prejudicial effect of any remarks made, the regulation of the substance and style of the closing argument is within the trial court's discretion. (*Pasch*, 152 Ill. 2d at 184-85, 604 N.E.2d at 315.) Although the prosecutor's remarks may sometimes exceed the bounds of proper comment, the verdict must not be disturbed unless the remarks resulted in substantial prejudice to the accused, such that the verdict would have been different had the remarks not been made. *Pasch*, 152 Ill. 2d at 185, 604 N.E.2d at 315.

Defendant complains that he was prejudiced when the prosecutor remarked during closing argument that "long curls *** is not that common a hairstyle, ladies and gentlemen." The prosecutor had previously stated that Claudette Springs identified defendant in the first photo array as a man with long curls. The trial court overruled defendant's objection and informed the jury that the comment was argument.

We do not believe that the prosecutor's remark was prejudicial. Immediately after the trial judge instructed the jury that the remark was argument, the prosecutor asked the jury to use its common sense in evaluating the identification testimony. When viewed in this context, the prosecutor's remark should have been recognized by the jury as the State's opinion, and the jury was free to agree or disagree with the State. (*People v. Wheatley* (1989), 183 Ill. App. 3d 590, 602, 539 N.E.2d 276, 284.) In addition, we note that on at least two occasions during closing arguments, the trial judge admonished the jury to disregard any argument that was not based on the evidence.

We also reject defendant's argument that the prosecutor

improperly commented during closing argument that the first photograph array was "a pretty good photo array, ladies and gentlemen." While it is reversible error for a prosecutor to offer a professional opinion or belief regarding the credibility of a witness, a prosecutor's comment about the nonsuggestiveness of an identification procedure such as a lineup does not constitute improper argument. (*People v. Sargent* (1989), 184 Ill. App. 3d 1016, 1026, 540 N.E.2d 981, 987.) The prosecutor's comment here was not seriously prejudicial because the prosecutor qualified his comment and the jury was instructed regarding the purpose of closing argument. (*People v. Jimenez* (1989), 191 Ill. App. 3d 13, 23, 547 N.E.2d 616.) The prosecutor qualified his comment by explaining to the jury that the array was "pretty good" because the facial features and hairstyles of each of the other men included in the array were "somewhat similar."

We also reject defendant's next claim that the prosecutor committed reversible error when he remarked during rebuttal that defendant's claim of self-defense in the Ware shooting was "weird." A prosecutor is entitled to comment on the evidence, draw inferences from that evidence, and comment on the accused's credibility. (*People v. Aliwoli* (1992), 238 Ill. App. 3d 602, 611-12, 606 N.E.2d 347, 353; *People v. Murillo* (1992), 225 Ill. App. 3d 286, 298-99, 587 N.E.2d 1199, 1208.) The prosecutor's remark here was not an improper characterization of defendant's claim regarding the unusual circumstances surrounding defendant's shooting of Terry Ware.

Defendant's final contention is that the prosecutor improperly suggested in rebuttal argument that defense counsel had briefed his alibi witnesses before they testified. Defense counsel, in closing argument, told the jury that defendant's alibi witnesses had done the "best that [they] could." The prosecutor, in rebuttal argument, responded, "Yeah, they did the best they could. After the briefing with the lawyer, they did the best they could." Defense counsel's objection was overruled. Defendant contends that the prosecutor's improper comment cast suspicion on the testimony of defendant's witnesses.

A prosecutor may make comments in rebuttal argument that are invited by comments made in defense counsel's own argument. (*People v. Davis* (1992), 236 Ill. App. 3d 233, 243, 603 N.E.2d 635, 641.) The credibility of a witness is a proper subject for closing argument if a prosecutor bases his or her remarks on facts in the record or inferences drawn from the facts. *People v. Rodriguez* (1992), 236 Ill. App. 3d 432, 441, 602 N.E.2d 1326, 1332; see *People v. Sanders* (1988), 168 Ill. App. 3d 295, 308, 522 N.E.2d 715, 725.

We do not consider the prosecutor's reference about defense counsel's "briefing" of alibi witnesses to be prejudicial. First, the prosecutor's comments were invited by the comments of defense counsel. The prosecutor made his reference to the "briefing" of witnesses only after defense counsel had remarked that the alibi witnesses had done the best that they could. In addition, the prosecutor's remarks were based on testimony in the record. One of defendant's own witnesses, Wayne Chapman, testified on cross-examination that earlier in the day he had a "briefing with the lawyer." We conclude that the prosecutor's reference to the witnesses' briefing session with counsel accurately characterized Chapman's testimony.

## IX. TRIAL COURT INSTRUCTIONS ON "OTHER CRIMES" EVIDENCE

Defendant next contends that the trial judge erred in instructing the jury about the proof of "other crimes" evidence, particularly defendant's shooting of Terry Ware. The disputed instruction given by the trial judge, Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981) (hereinafter IPI Criminal), reads as follows:

"Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment."

Before jury selection, defense counsel argued that defendant's shooting of Ware should have been characterized in the instruction as "conduct" rather than an "offense" because the State had not yet presented evidence of defendant's role in Ware's death. The trial judge declined to use the term "conduct" because "what the State intends to bring out is clearly an offense and in fact it is a charged offense."

The trial court has discretion to determine which instructions to submit to the jury. (*People v. Johnson* (1992), 236 Ill. App. 3d 125, 137, 603 N.E.2d 624, 632.) Jury instructions are drafted to inform the jury of the correct principles of law so that it can reach a correct conclusion based upon the law and the evidence. (*People v. Moore* (1990), 199 Ill. App. 3d 747, 773-74, 557 N.E.2d 537, 555.) Absent a clear abuse of discretion, a trial court's determination of the form in which an instruction is given will not be disturbed on review. *People v. Leaks* (1989), 179 Ill. App. 3d 231, 241, 534 N.E.2d 491, 496.

Defendant notes that the current IPI Criminal 3d No. 3.14 gives the trial court a choice between "an offense," "offenses," and "conduct." He points out, for instance, that the committee notes to the most recent version of IPI Criminal 3d No. 3.14 explain that the term "conduct" is to be used where defendant's actions are not technically an "offense." IPI Criminal 3d No. 3.14 (1992).

■ The version of IPI Criminal No. 3.14 existing at the time of trial in November 1990, however, did not contain any comments or committee notes suggesting that, in certain cases, the word "conduct" might be used as an alternative to the word "offense" in the instruction. Because the instruction which was given accurately followed the current IPI version in effect at the time of trial, we conclude that the trial court gave the jury a proper instruction. *People v. Moore* (1990), 199 Ill. App. 3d 747, 774, 557 N.E.2d 537, 556; *People v. Peebles* (1983), 114 Ill. App. 3d 684, 693, 449 N.E.2d 230, 236.

## X. JURY QUESTION

Defendant contends, finally, that the trial court erred in refusing to answer an inquiry by the deliberating jury about the appropriate burden of proof it was to apply. The portion of the jury instruction in question provided, as follows:

> "To sustain the charge of first degree murder, the State must prove the following propositions:
> First: That the defendant performed the acts which caused the death of Robert Springs and
> Second: That when the defendant did so, he intended to kill or do great bodily harm to Robert Springs, or he knew that his acts would cause death to Robert Springs, or he knew that his acts created a strong probability of death or great bodily harm to Robert Springs.
> If you find from your consideration of all of the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

At 5:45 on the evening of November 29, 1990, after deliberating for six hours, the jury sent the trial court a note asking, "If we feel he is guilty but don't think there is enough evidence to prove this beyond a reasonable doubt, should we vote guilty?" The trial court wrote back, "The law which you are to apply is contained in the instructions. Read the instructions." Defense counsel objected, contending that the judge could have answered that question "no." Shortly afterwards, the court sequestered the jury. The following day, the jury found defendant guilty of first degree murder.

Generally, jurors are entitled to have their questions answered. (*People v. Reid* (1990), 136 Ill. 2d 27, 39, 554 N.E.2d 174, 179.) A trial court has a duty to instruct the jury where clarification is requested, the original instructions are incomplete, and the jurors are manifestly confused. *Reid*, 136 Ill. 2d at 39, 554 N.E.2d at 179.

Nevertheless, a trial court has discretion to refrain from answering a jury's question, and the court's decision will not be disturbed absent an abuse of that discretion. (*Reid*, 136 Ill. 2d at 39, 554 N.E.2d at 179; *People v. Patten* (1992), 240 Ill. App. 3d 407, 417, 608 N.E.2d 351, 358.) Such a course of action is acceptable if the instructions are readily understandable and sufficiently explanatory of relevant law; further instructions would serve no useful purpose or would potentially mislead the jury; or the jury's inquiry involves a question of fact. *Reid*, 136 Ill. 2d at 39, 554 N.E.2d at 179; *People v. Alcala* (1993), 248 Ill. App. 3d 411, 421, 618 N.E.2d 497, 504-05.

We believe that the instructions given were readily understandable. The instructions fully apprised the jurors of the relevant law and were written in clear and common language that they could understand. Numerous cases have held that a trial court properly exercises its discretion when it responds to a jury question by referring the jurors back to clear instructions. (*Patten*, 240 Ill. App. 3d at 418-19, 608 N.E.2d at 359 (citing cases).) We hold that the trial judge here did not abuse her discretion when she declined to answer the jury's question and instructed the jury to reach a verdict based on the instructions the jury had received.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and JOHNSON, J., concur.