No. 2--95--0476          

                                                  

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF      )  Appeal from the Circuit Court 

ILLINOIS,                       )  of Lake County.

                                )

     Plaintiff-Appellee,        )

                                )

          v.                    )  No. 94--CF--1458

                                )    

SHARIFF G. BANKS,               )  Honorable

                                )  Christopher C. Starck,

     Defendant-Appellant.       )  Judge, Presiding.

_________________________________________________________________

     JUSTICE THOMAS delivered the opinion of the court:

     

     The defendant, Shariff G. Banks, was indicted by grand jury

with five counts of first degree murder (720 ILCS 5/9--1(a)(1),

(a)(2), (a)(3) (West 1994)) in connection with the shooting death

of Mary Davis.  Following a jury trial in the circuit court of Lake

County, the defendant was found guilty on three of those counts and

sentenced to 50 years in prison.  We affirm.

                                   FACTS

     The facts relevant to our decision are as follows.  The

defendant was arrested and charged with first degree murder on July

22, 1994.  On August 17, 1994, he was indicted on five counts of

first degree murder.  Prior to trial, the defendant moved to

suppress oral, written, and videotaped statements he made to the

police subsequent to his arrest.  Following an evidentiary hearing

on the motion, the motion was denied.  The case proceeded to a jury

trial in October 1994.

     At trial, Mark Tkadletz, a Waukegan police officer, testified

that he was working on July 20, 1994.  During his shift, he

received a call concerning shots fired in the 1600 block of Lyons

Court, in Waukegan, Illinois.  While en route to that location, he

was informed of a possible accident in the 1700 block of Lyons

Court.  Upon arriving at his destination, he observed that a

vehicle had crashed into a house at 1713 Lyons Court.  When he

approached the vehicle, he observed a female with a bleeding head

wound slumped over in the backseat of the vehicle. 

     Lakesha Morgan testified that she was in the eighth grade and

attended school with her friend, Mary Davis.  On the evening of

July 20, 1994, she was riding with Davis in a gray, four-door

vehicle being driven by Daryl Johnson.  Johnson was a member of the

Gangster Disciples gang.  At some point, Davis asked to be taken to

her home on Lyons Court.  Morgan was seated in the front passenger

seat, and Davis was seated in the backseat on the driver's side. 

As they traveled on Lyons Court, another vehicle crashed into the

front of Johnson's vehicle.   According to Morgan, she heard shots

from the front.  Johnson put his vehicle into reverse, and it hit

another vehicle from behind.  She then heard shots from the rear. 

Johnson turned the wheel sharply and his vehicle hit a house. 

Johnson and Morgan ran from the vehicle.  Morgan testified that she

never saw Johnson put his hands out the window of the vehicle and

never saw a gun in the vehicle.    

     The State called a series of witnesses who testified as to

what they heard or observed in the vicinity on July 20, 1994. 

Viola Banks testified that sometime between 10:30 p.m. and 11 p.m.

she heard shots and then a vehicle crashed into her house at 1713

Lyons Court.  Maria Henderson, who resided at 1720 Lyons Court,

testified that around 10:30 p.m. she heard shots and observed a

vehicle crash into her neighbor's house.  Herman Ray, who resided

at 1526 Lyons Court, testified that he heard shots, screeching

tires, the roar of car engines, and a crash.  Nelson Tate, of 1712

Lyons Court, testified that he heard shots, tires screeching, and

a crash.  Robert Chambers, who resided at 1618 Lyons Court,

testified that he heard a bang and shots and then observed a

vehicle back into another.  Valerie Cooper, who resided at 1602

Lyons Court, testified that she was beginning to back out of her

driveway at 10:45 p.m. when a gray vehicle drove by.  She heard

shots and observed the same gray vehicle backing up past her

driveway.  She did not see anybody with their hands out the window

of the gray vehicle or anything sticking out the window.

     Kanesha Davis, the older sister of the 15-year-old victim,

next testified.  She had been riding in Johnson's vehicle earlier

in the evening on July 20, 1994.  When she was dropped off at a

friend's house, her sister was still in the vehicle.  As she later

walked toward her home at 1522 Lyons Court, she heard a screech and

shots.

     Lonnie Brown, a North Chicago police officer, testified that

he was working the midnight shift on July 21, 1994.  During his

shift, he received a call concerning a drive-by shooting.  In

responding to the call, he observed a green vehicle matching the

description of the vehicle involved in the shooting.  He observed

the passenger of the vehicle extend an arm out of the vehicle and

fire shots at a pedestrian.  He followed the vehicle, which

eventually lost control and hit a telephone pole.  Four subjects

ran from the vehicle.  In conducting a search of the area, Brown

found a semiautomatic pistol loaded with what appeared to be a

.380-caliber round of ammunition.  

     Donald Meadie, a Waukegan police officer, testified that he

stopped a vehicle on July 22, 1994.  The vehicle had no license

plates and was occupied by two black males.  One of the occupants

of the vehicle was the defendant.  Both occupants were taken to the

police station.

     Dennis Cobb, a Waukegan police officer, testified that he was

directed to 1713 Lyons Court on July 20, 1994.  As an evidence

technician, he examined the gray vehicle that hit the house.  He

observed a bullet hole in the front fender behind the wheel well of

the driver's side area, a bullet hole to the left center of the

back door of the driver's side, and a dent just below the driver's

side door handle where a bullet had hit and ricocheted.  He

recovered the bullet that caused the hole in the front fender and

a bullet that fell to the ground when he opened the rear driver's

side door.  Upon examining the passenger side of the vehicle, he

observed blood stains in the backseat and a bullet hole in the

front-seat headrest.  According to Cobb, the bullets which hit the

front fender and the back door of the driver's side came from the

front and somewhat to the side of the vehicle.  The bullet hole

that went through the headrest also indicated the bullet came from

the front and somewhat to the side of the vehicle.   

     James McCarthy, a Waukegan police officer, testified that the

gun recovered from the green vehicle on July 21, 1994, was a .380-

caliber automatic handgun.  He retrieved two rounds of live

ammunition from the gun.  McCarthy also testified that he attended

the autopsy of the victim, where a projectile was recovered from

her head wound and turned over to him.

     Robert Kerkorian, a Waukegan police detective, testified that

he interviewed the defendant at the police station on July 22,

1994.  The defendant told him that he had been shot in the chest

with a shotgun during the previous week.  He believed he had been

shot by Johnson, a member of the Gangster Disciples gang.  The

defendant was a member of the Vice Lord gang.  On July 20, 1994,

the defendant was with some friends when they observed a gray

vehicle being driven by Johnson.  The defendant and his friends got

into two vehicles they had rented from a "dope fiend" and followed. 

He was in the front passenger seat of a brown vehicle, following

behind Johnson's vehicle as it traveled on Lyons Court.  Some of

the defendant's friends were in a green vehicle, which turned down

another street.  The gray vehicle eventually came up on the green

vehicle.  The vehicles stopped briefly, and the gray vehicle went

into reverse and struck the brown vehicle.  According to the

defendant, Johnson pointed something out the window.  The defendant

then took a .38-caliber revolver in his possession and fired

approximately five shots from the brown vehicle at the gray vehicle

as it passed by the brown vehicle in reverse.  The defendant told

Kerkorian that he was not trying to kill or hurt anybody and did

not see Davis in the backseat.  The defendant later turned the

weapon over to a friend and never saw it again.    

     The parties entered stipulations into evidence.  William

Wilson, a forensic scientist with the Northern Illinois Police

Crime Laboratory, would testify concerning paint samples collected

from the green, gray, and brown vehicles.  Robert Wilson, a

firearms examiner with the Northern Illinois Police Crime

Laboratory, would testify that he examined the bullet recovered

from Davis and two bullets recovered from the gray vehicle.  He

would further testify that the bullets were .38 or .357 caliber and

that the bullets were fired from the same gun but not from the

.380-caliber gun recovered.  Dr. John Teggatz, a forensic

pathologist, would testify that he performed the autopsy on Davis

and that she died of cerebral lacerations and contusions caused by

a gunshot wound to the head.  The defense presented no additional

evidence.

     The jury found the defendant guilty of first degree murder as

charged in count I and of first degree felony murder as charged in

counts IV and V of the indictment.  The defendant was later

sentenced to 50 years' imprisonment.  He filed a timely appeal.

                                 ANALYSIS

     On appeal, the defendant raises three issues for our review. 

He contends that (1) he was denied his constitutional right to a

fair trial as a result of trial court errors with respect to jury

instructions; (2) he was improperly convicted of first degree

felony murder premised on mob action; and (3) the first degree

murder convictions must be reversed because the State failed to

prove him guilty beyond a reasonable doubt.

                           I.  Jury Instructions

     The defendant initially contends that he was denied his

constitutional right to a fair trial as a result of trial court

errors with respect to jury instructions.  These alleged errors

include: (1) the issuance of too many definitional and issues

instructions relating to first degree murder; (2) improper

instruction under the felony murder statute; and (3) the failure to

render all verdict forms to the jury.

     It is well established that every litigant is entitled to have

the jury instructed as to the law governing the case.  Malek v.

Lederle Laboratories, 125 Ill. App. 3d 870, 872 (1984).  The

instructions must be sufficiently clear so as not to confuse or

mislead the jury.  Malek, 125 Ill. App. 3d at 872.  According to

Supreme Court Rule 451(a) (134 Ill. 2d R. 451(a)), juries in

criminal cases must be instructed pursuant to the Illinois Pattern

Jury Instructions, Criminal (IPI Criminal), unless the court

determines that the particular instruction does not accurately

state the law.  See People v. Haywood, 82 Ill. 2d 540, 545 (1980);

People v. Testin, 260 Ill. App. 3d 224, 230 (1994).  Absent a clear

abuse of discretion, a trial court's determination of the form in

which an instruction is given will not be disturbed on review. 

People v. Curtis, 262 Ill. App. 3d 876, 890 (1994).  

     We first examine the alleged issuance of too many definitional

and issues instructions relating to first degree murder.

     The case at hand proceeded to jury trial in October 1994.  At

that time, the definitional and issues instructions relating to

first degree murder were set forth in IPI, Criminal, as Nos. 7.01A

and 7.02A, respectively.  Illinois Pattern Jury Instructions,

Criminal, Nos. 7.01A, 7.02A (3d ed. 1992) (IPI Criminal 3d).  In

instructing the jury, the trial judge gave two definitional and two

issues instructions, over defense counsel's objections.  The

defendant contends that the trial judge should have rendered only

one definitional and one issues instruction.  We agree. 

     The language of IPI Criminal 3d Nos. 7.01A and 7.02A suggests

the giving of one definitional and one issues instruction relating

to first degree murder, regardless of how many counts of first

degree murder with which a defendant is charged.  IPI Criminal 3d

Nos. 7.01A, 7.02A.  Citing People v. Johnson, 250 Ill. App. 3d 887

(1993), the Committee Note to IPI Criminal 3d No. 7.02A expressly

states that only one issues instruction should be given to the jury

to explain the issues of first degree murder; and that separate

issues instructions for each of the different ways first degree

murder can be charged under section 9--1(a)(1) through (a)(4) of

the Criminal Code of 1961 (Code) (720 ILCS 5/9--1(a)(1) through 9--

1(a)(4) (West 1994)) are not to be given.  IPI Criminal 3d No.

7.02A, Committee Note at ___  (Supp. 1996).  While committee

comments are not the law, the trial court is allowed to deviate

from the suggested instructions and format only where necessary to

conform to unusual facts or new law (People v. Whitaker, 263 Ill.

App. 3d 92, 98 (1994)), neither of which is present here.

     In Johnson, the defendant argued that the trial court erred in

giving the jury five instructions on the issues of first degree

murder, one for each count of murder.  The Appellate Court, Fourth

District, agreed that only one issues instruction should have been

provided to the jury.  However, it found that the defendant failed

to preserve the issue for review and the error did not amount to

plain error.  Johnson, 250 Ill. App. 3d at 903-04.  The plain error

exception to the waiver rule permits a reviewing court to consider

issues waived for the purposes of review when the evidence in a

criminal case is closely balanced, or the error is so fundamental

and of such magnitude that the accused was denied a fair trial. 

People v. Lucas, 151 Ill. 2d 461, 482 (1992).  The Johnson court

did not find the evidence to be closely balanced or to have denied

the accused a fair trial.  Johnson, 250 Ill. App. 3d at 905.

     Accordingly, we find the trial court erred in giving multiple

definitional and issues instructions of first degree murder. 

Unlike in Johnson, we find no waiver because the defendant objected

to the instructions given.  As in Johnson, however, we find the

error in rendering multiple instructions to have been harmless

because the error did not deny the defendant a fair trial.  See

Johnson, 250 Ill. App. 3d at 905.

     We next examine the alleged improper instruction under the

felony murder statute.  

     In the case sub judice, the defendant was charged with two

counts of first degree murder under the felony murder statute.  720

ILCS 5/9--1(a)(3) (West 1994).  The forcible felonies alleged in

the indictment were that of attempted first degree murder of Daryl

Johnson (count IV) and mob action (count V).  IPI Criminal No. 24--

25.10 addresses when a forcible felon is not entitled to use force.

     IPI Criminal 2d No. 24--25.10 (2d ed. 1981) (IPI Criminal 2d)

provides:

          "A person is not justified in the use of force if he is

     [(attempting to commit) (committing) (escaping after the

     commission of)] a forcible felony."  

The Committee Note to that version of No. 24--25.10 expressly

states that the trial court is to give an instruction defining

"forcible felony."  IPI Criminal 2d No. 24--25.10, Committee Note,

at 557. 

     The defendant contends that the trial court erred in its

rendering of jury instructions concerning IPI Criminal No. 24--

25.10 because the instructions improperly replaced the words

"forcible felony" with "mob action" and with "attempted first

degree murder of Daryl Johnson".  Citing People v. Payne, 194 Ill.

App. 3d 238 (1990), and People v. Fernandez, 240 Ill. App. 3d 518

(1992), the defendant also contends that the trial court erred in

failing to define "forcible felony."  

     The defendant's contentions are without merit because he

erroneously relies on the language of IPI Criminal No. 24--25.10

found in the second edition of IPI Criminal.  At the time of the

October 1994 trial, the jury should have been instructed, and was

instructed, pursuant to the third edition of IPI Criminal No. 24--

25.10.    

     IPI Criminal 3d No. 24--25.10 reads as follows:

          "A person is not justified in the use of force if he is

     [(attempting to commit) (committing) (escaping after the

     commission of)] ____________."

The Committee Note to IPI Criminal 3d No. 24--25.10 expressly

states that the trial court is to insert in the blank the forcible

felony committed or attempted.  It does not require the giving of

a definition of "forcible felony."  IPI Criminal 3d No. 24--25.10,

Committee Note, at 320.  

     Because the instruction which was given accurately followed

the current IPI Criminal version in effect at the time of trial, we

conclude that the trial court gave a proper instruction.  See

Curtis, 262 Ill. App. 3d at 890.  The trial court properly inserted

the terms "first degree murder" and "mob action" and need not have

given a definition of "forcible felony."  

     Finally, we examine the alleged failure to render all verdict

forms to the jury.

     The defendant contends that the jury should have received 10

verdict forms, but that there are only 8 such forms in the record. 

He argues that the two missing verdict forms, both relating to

involuntary manslaughter, precluded the jury from finding him

guilty of a lesser offense.  Citing People v. Cadwallader, 181 Ill.

App. 3d 488 (1989), he demands a new trial.

     The State asserts at the outset that this issue has been

waived because the defendant failed to preserve the issue by

raising it in his motion for a new trial.  As a general rule, the

failure to raise an issue in a written motion for a new trial

results in a waiver of that issue on appeal.  People v. Enoch, 122

Ill. 2d 176, 186 (1988).  Having reviewed the defendant's motion

for a new trial, we agree with the State that the defendant failed

to raise this issue below.  Accordingly, we deem this issue waived. 

Had we not done so, we would, nevertheless, resolve the issue in

favor of the State.

     Upon careful review, we agree with the defendant that the

record contains only 8 of the 10 verdict forms.  However, we

disagree that both of the missing verdict forms relate to

involuntary manslaughter.  One of the missing verdict forms offered

a finding of guilt as to involuntary manslaughter during an attempt

to kill Daryl Johnson, while the other offered a finding of not

guilty of first degree murder during the commission of mob action. 

We also disagree that a new trial is warranted under Cadwallader. 

The defendant cites that case as requiring a new trial where there

is an improper reading of jury instructions.  Cadwallader is

inapplicable to the case at hand because the case at hand does not

present a question concerning the issuance of inadequate

instructions.  Rather, the question is whether the jury received

all the necessary verdict forms.  

     Although we have stated that the record only contains 8 of the

10 verdict forms, we presume that the jury received all 10 forms. 

See People v. Jones, 196 Ill. App. 3d 937, 960 (1990)("where a

record is incomplete, or is silent, a reviewing court will invoke

the presumption that the trial court ruled or acted correctly"). 

Having carefully reviewed the entire record, including the reports

of proceedings, we note that at the close of the evidence the trial

judge rendered a forms of verdict instruction to the jury that

referred to all 10 verdict forms.  The trial judge also then read

each of the 10 verdict forms into the record.  In light of these

findings, we conclude that the trial court rendered all 10 verdict

forms to the jury. 

     The defendant also argues that the cumulative effect of the

errors cited with respect to jury instructions constitutes

reversible error.  The resolution of the general argument that the

cumulative effect of alleged errors warrants a reversal depends

upon the court's evaluation of the individual errors.  Where the

alleged errors do not amount to reversible error on any individual

issue, there generally is no cumulative error.  People v. Albanese,

102 Ill. 2d 54, 82-83 (1984).  Given our disposition of each of the

defendant's arguments, we conclude that their cumulative effect

does not warrant reversal of the defendant's conviction.

                II.  Felony Murder Premised on Mob Action 

     The second contention of the defendant on appeal is that he

was improperly convicted of first degree felony murder premised on

mob action.  

     In the case sub judice, the defendant was charged with two

counts of first degree murder under the felony murder statute.  720

ILCS 5/9--1(a)(3) (West 1994).  The felony murder statute provides:

          "(a) A person who kills an individual without lawful

     justification commits first degree murder if, in performing

     the acts which cause the death:

                                   * * *

               (3) he is attempting or committing a forcible felony

          other than second degree murder."  720 ILCS 5/9--1(a)(3)

          (West 1994).

Forcible felony is defined in section 2--8 of the Code as follows:

     " 'Forcible felony' means treason, first degree murder, second

     degree murder, aggravated criminal sexual assault, criminal

     sexual assault, robbery, burglary, residential burglary,

     aggravated arson, arson, aggravated kidnaping, kidnaping,

     aggravated battery resulting in great bodily harm or permanent

     disability or disfigurement and any other felony which

     involves the use or threat of physical force or violence

     against any individual."  720 ILCS 5/2--8 (West 1994).

One of the forcible felonies alleged in the defendant's indictment

was that of mob action (count V) (720 ILCS 5/25--1(a)(1) (West

1994)).     

     The defendant initially argues that mob action cannot serve as

the predicate felony for felony murder because (1) mob action is

not specifically listed among the forcible felonies in section 2--8

of the Code; and (2) mob action under section 25--1(a)(1) of the

Code runs to a disturbance of the public peace whereas a forcible

felony concerns violence to an individual.  We are not persuaded by

either of these arguments.

     Concerning the first argument, while mob action is not

specifically listed among the forcible felonies in section 2--8 of

the Code (720 ILCS 5/2--8 (West 1994)), the definition of forcible

felony is not limited to those listed.  Rather, the definition

expressly includes "any other felony which involves the use or

threat of physical force or violence against any individual."  720

ILCS 5/2--8 (West 1994).  

     It is worth noting that, even if we had not found mob action

to be an appropriate predicate felony for felony murder, the jury

returned a finding of guilt on three counts of first degree murder. 

First degree murder is unquestionably a proper predicate forcible

felony.  See 720 ILCS 5/2--8 (West 1994).

     Concerning the second argument, although section 25--1(a)(1)

of the mob action statute refers to "the use of force or violence

disturbing the public peace" (emphasis added) (720 ILCS 5/25--

1(a)(1) (West 1994)), section 25--1(a)(1) has been used to charge

defendants with mob action which involved violence against an

individual.  See People v. Fauber, 266 Ill. App. 3d 381 (1994).  In

Fauber, the defendant was charged with mob action under section 25-

-1(a)(1) of the Code, as was the defendant in this case.  There,

the defendant and at least one other attacked a fellow high school

student.  The Fauber court affirmed the jury's conviction of the

defendant for mob action.  In addition, section 25--1(d) of the mob

action statute contemplates mob action as involving "violence to

the person or property of another." (Emphasis added.)  720 ILCS

5/25--1(d) (West 1994).  Moreover, IPI Criminal 3d No. 19.03

defines mob action as requiring that "one of the participants in

the mob action violently inflicts injury to the [(person)

(property)] of another."  IPI Criminal 3d No. 19.03. 

     The defendant next argues that mob action requires intent or

knowledge, which were not present here.

     Pursuant to People v. Land, 169 Ill. App. 3d 342, 356-57

(1988), the application of the felony murder rule is limited to

those predicate felonies with an intentional or knowing state-of-

mind requirement.  Here, the defendant argues that the events at

issue did not involve an intentional or knowing state of mind.  He

claims that the shots he fired in the direction of the gray vehicle

were strictly the result of his feeling the need to defend himself

once the gray vehicle backed up into his vehicle and he observed

Johnson point something out the window.  We find that the jury

could have found the evidence to support a contrary conclusion. 

The defendant told the police that he had been shot in the chest

with a shotgun during the previous week and that he believed the

shooter was Johnson.  When the defendant thereafter saw a gray

vehicle being driven by Johnson, he and some friends followed after

Johnson in two separate vehicles.  Eventually, the green and brown

vehicles sandwiched the gray vehicle.  The gray vehicle was rammed

and fired upon from the direction of the green vehicle.  Only after

this sequence of events did the gray vehicle back into the

defendant's vehicle.  Under these circumstances, a jury could have

concluded that the attack on Johnson, which led to the death of

Davis, was premeditated in retaliation for the earlier shooting of

the defendant and was not merely a reckless act.       

                   III. Guilt Beyond a Reasonable Doubt

     The third contention of the defendant on appeal is that the

first degree murder convictions must be reversed because the State

failed to prove him guilty beyond a reasonable doubt. 

     A conviction must be based upon proof beyond a reasonable

doubt.  People v. Foules, 258 Ill. App. 3d 645, 653 (1993).  The

reviewing court's duty is not to ask itself whether it believes the

evidence establishes guilt, but whether the evidence viewed in a

light most favorable to the prosecution would allow any rational

trier of fact to find the essential elements of the crime proved

beyond a reasonable doubt.  Foules, 258 Ill. App. 3d at 653.  A

reviewing court may not substitute its judgment for that of the

trier of fact on questions involving the weight of the evidence or

the credibility of the witnesses.  People v. Winfield, 113 Ill.

App. 3d 818, 826 (1983).  The reversal of a conviction is required

only where the defendant can show that the evidence is so

unsatisfactory or improbable as to create a reasonable doubt of the

defendant's guilt.  People v. Murray, 194 Ill. App. 3d 653, 656

(1990).

     The defendant first argues that his first degree murder

conviction should be reversed because the evidence showed he was

acting in self-defense.  Alternatively, he claims that the

conviction should be reduced to second degree murder.

     The difference between a justified killing under self-defense

and one not justified, amounting to second degree murder, is that

in the former instance the belief that the use of force which is

intended to cause death of great bodily harm is reasonable under

the circumstances (720 ILCS 5/7--1 (West 1994); People v. Turcios,

228 Ill. App. 3d 583, 594 (1992)), and in the latter the belief is

unreasonable (720 ILCS 5/9--2(a)(2) (West 1994);  see People v.

Ellis, 107 Ill. App. 3d 603, 611 (1982)).

     Although he did not testify at trial, the defendant maintains

that his statements to the police should have led the jury to find

that he possessed the belief that the use of force was necessary. 

He told the police that he had been shot earlier by a person he

believed to be Johnson.  Only after being struck by Johnson's

vehicle and seeing Johnson put something out the window did the

defendant fear being shot again and resort to firing his gun in

Johnson's direction.  The defendant argues that the jury simply had

to assess whether his belief that force was necessary was

reasonable, in which case it would amount to self-defense, or

unreasonable, in which case it would mandate a finding of a lesser

offense than first degree murder--second degree murder.  See Ellis,

107 Ill. App. 3d at 611-12.  Under the circumstances of this case,

we find the defendant's arguments to be without merit. 

     In the present action, the jury was instructed on self-defense

and second degree murder.  Nevertheless, the jury found the

defendant guilty of three counts of first degree murder.  In doing

so, it plainly rejected the self-defense and second degree murder

options.  It is the function of the jury to determine the

credibility of the witnesses and assess the weight to be afforded

evidence, and we may not lightly set aside such findings, nor

substitute our own judgment for that of the jury.  People v. Gomez,

215 Ill. App. 3d 208, 215 (1991).  Here, the jury did not find the

defendant's theory that force was necessary to be credible.  We

will not substitute our judgment for that of the jury.  In fact,

the evidence supports the jury's determination that force was

unnecessary and that the defendant possessed an intent to kill. 

The defendant told the police that he and his friends followed in

pursuit of the gray vehicle being driven by Johnson.  The defendant

never stated that he saw that Johnson had a gun or that Johnson

fired shots.  His statements that force was necessary were

contradicted by Morgan and Cooper.  Morgan testified that Johnson

never stuck his arm out the window and did not have a gun.  Cooper

testified that she did not see anyone stick anything out of the

gray vehicle. 

     The defendant next argues that the State failed to present

sufficient corroboration to his statements to the police to sustain

a conviction of the murder of Davis based on those statements.

     The State asserts at the outset that this issue has been

waived because the defendant failed to preserve the issue by

raising it in his motion for a new trial.  The failure to raise an

issue in a written motion for a new trial results in a waiver of

that issue on appeal.  Enoch, 122 Ill. 2d at 186.  Having reviewed

the defendant's motion for a new trial, we note that the defendant

contends that he was not proved guilty beyond a reasonable doubt. 

While the issue at hand is more narrow, it runs to whether the

defendant was found guilty beyond a reasonable doubt.  Accordingly,

we find no waiver.

     In order for a conviction based on a confession to be

sustained, the confession must be corroborated.  People v.

Willingham, 89 Ill. 2d 352, 358-59 (1982).  The corroboration

requirement is satisfied by proof of the corpus delicti. 

Willingham, 89 Ill. 2d at 359; In re D.A., 114 Ill. App. 3d 522,

524 (1983).

     Proof of guilt for a criminal offense may be divided

conceptually into proof that an injury or loss occurred, that the

cause of the loss was criminal in nature, and that the accused was

the offender.  People v. Furby, 138 Ill. 2d 434, 445-46 (1990). 

The first two components--the occurrence of the injury or loss and

its causation by criminal conduct--are termed the corpus delicti;

the identity of the accused as the offender, the ultimate issue, is

not considered part of the corpus delicti.  Furby, 138 Ill. 2d at

446.

     In the instant matter, we find the evidence sufficiently

established the corpus delicti of murder.  The evidence plainly

shows that an injury occurred: the shooting and subsequent death of

Davis.  The evidence likewise shows that someone was criminally

responsible for the shooting that led to her death.  

     The defendant contends that he could not have been the shooter

because (1) the bullets found in the gray vehicle came from the

front of that vehicle and not from the rear, where he was in the

brown vehicle; and (2) although he told the police that he

possessed and fired a .38-caliber revolver, the deadly bullet was

fired from either a .38- or .357-caliber weapon so the bullet may

not have been fired from his weapon. 

     The defendant mischaracterizes the evidence concerning the

pathway of the bullets found in the gray vehicle.  Officer Cobb

testified that the two bullets found in the gray vehicle came from

the front and somewhat to the side of the vehicle, as did the

bullet that went through the headrest.  He gave no testimony

concerning the trajectory of the bullet which was later recovered

from the victim's head. 

     Furthermore, the deadly bullet could have been fired from the

defendant's weapon.  The parties stipulated that the bullet

retrieved from the victim's head was fired from a .38- or .357-

caliber gun.  The only gun recovered by the police was a .380

caliber, which could not have been the murder weapon.  The

defendant's gun, a .38 caliber, was never recovered but could have

been the murder weapon.  

     The corroborating evidence presented could be considered

together with the defendant's statements that he fired

approximately five shots at the gray vehicle as it passed with his

.38-caliber revolver.  Together, the jury could have found the

defendant to have been the murderer.

     The defendant also argues that the jury's confusion, as

evidenced by its question to the trial judge during deliberations,

was evidence of reasonable doubt. 

     The State asserts that this issue has been waived because the

defendant failed to preserve the issue by raising it in his motion

for a new trial.  See Enoch, 122 Ill. 2d at 186.  Having reviewed

the defendant's motion for a new trial, we note that the defendant

contends that he was not proved guilty beyond a reasonable doubt. 

Again, while the issue at hand is more narrow, it runs to whether

the defendant was found guilty beyond a reasonable doubt. 

Accordingly, we find no waiver.

     During deliberations, the jury directed a note to the trial

judge which read as follows:

     "Do we have to accept a confession as 'absolute' proof that

     the defendant's gun fired the bullet that killed Mary or can

     we find resonable [sic] doubt for which gun was responsible?"

The trial judge responded with a note stating:

     "You have received all the evidence and instructions on the

     law.  Please continue deliberating."

     A trial court's decision to answer or refrain from answering

a question from the jury will not be disturbed absent an abuse of

discretion.  People v. Landwer, 279 Ill. App. 3d 306, 314 (1996),

citing People v. Reid, 136 Ill. 2d 27, 38-39 (1990).  A trial judge

may properly decline to answer jurors' questions when the

instructions are legally correct and understandable, further

instruction would mislead the jurors, jurors raise questions of

fact, or an answer or explanation by the court would likely direct

a verdict.  People v. Childs, 159 Ill. 2d 217, 228 (1994). 

However, jurors are entitled to have their questions answered. 

Thus, the general rule is that the trial court has a duty to

provide instruction to the jury where it has posed an explicit

question or requested clarification on a point of law arising from

facts about which there is doubt or confusion.  Childs, 159 Ill. 2d

at 228-29.

     As to the defendant's argument that the note evidences jury

confusion such that it could not possibly find him guilty beyond a

reasonable doubt, we find such an argument to be speculative.  The

note could as easily evidenced the jury's careful consideration of

all the evidence leading to its findings of guilt. 

     In sum, we find that a rational trier of fact could have found

the defendant guilty of first degree murder beyond a reasonable

doubt.  Consequently, we affirm the defendant's convictions. 

                                CONCLUSION

     For the foregoing reasons, we affirm the judgment of the

circuit court of Lake County.

     Affirmed.

     INGLIS and HUTCHINSON, JJ., concur.